IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In the Matter of:          )  No. 11 B 38307
                           )
MARGARET ANN JOHNSSON,     )  May 20, 2015
                           )  11:00 A.M.
          Debtor.          )  Chicago, Illinois

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE TIMOTHY BARNES

APPEARANCES:

MS. CATHERINE STEEGE, trustee
MR. LANDON RAIFORD
on behalf of the trustee;

MS. KATIE GLEASON
on behalf of the Office of the U.S. Trustee;

MS. MARGARET JOHNSSON
Pro se.

 1          THE COURT:  All right.  Good morning, again.

 2    Let's take up the 11:00 o'clock matter, please.

 3          THE CLERK:  Taking up the Court's 11:00 o'clock

 4    matter, Margaret Johnsson, with related adversary.

 5          THE COURT:  Good morning.  Once we have everyone

 6    here, could we have appearances from my left to my

 7    right?

 8               Okay, we have everyone in their respective

 9    places.  Appearances from my left to my right, please.

10          MS. GLEASON:  Katie Gleason, on behalf of the

11    United States Trustee.

12          MR. RAIFORD:  Landon Raiford for the trustee.

13          MS. STEEGE:  Good morning, your Honor.  Cathy

14    Steege, the trustee.

15          MS. JOHNSSON:  Margaret Johnsson, pro se debtor.

16          THE COURT:  All right.  Good morning, everyone.

17               So we have a continued hearing on a number

18    of matters, and we have a number of original motions

19    that are up for today as well.  There's a number of

20    ways we can tackle this particular set of matters, but

21    before we do, let's sort of take a pulse on where we

22    are in this case.  And one of the things that allows me

23    to do that is the trustee's status report, which I

24    asked the trustee to file and I have a copy of, and I'm

25    sure Ms. Johnsson has seen it because she referenced it

1    in some of her filings.  The status report tells me

2    what I already knew, that this is a very difficult case

3    and that this involved a lot of the time on all the

4    parties.  It reveals what is an unfortunate fact, that

5    the assets of the estate are less than the billing of

6    the trustee's counsel to date, and that's not taking

7    into account the trustee's statutory fee.  As it stands

8    right now, assuming that the debtor were to retain her

9    discharge and the case be concluded, there would be no

10   distribution that I can see for unsecured creditors in

11   this case.

12           Of course, the case goes back to late 2011

13   and it's not difficult to accumulate this amount of

14   time in a four-year case, and I see that.  Now there

15   has been a number of professionals who worked on the

16   case, and I understand that some people left at Jenner

17   & Block.  I know in particular one of the attorneys

18   I've seen on here is now with the U.S. Trustee's

19   Office, I believe, or the U.S. Attorney's Office.

20       MS. STEEGE:  The U.S. Attorney's Office, your

21   Honor.

22       THE COURT:  Right.  And I understand also that

23   there's been some other reasons to make changes, but

24   there have been a lot of people who worked on the file.

25           The magnitude of the fees is in the

1    neighborhood of what I think perhaps a case of this

2    complexity would rightfully generate, although I'm not

3    ruling right now with respect to any fee application or

4    what I would or would not do, but it puts us in the

5    proper framework to consider where we are today.

6            Now, this case has gone on for quite some

7    time.  This case predates me, and the case remains open

8    for really I think three or four issues at this point,

9    and that is we have the Chapter 7 trustee's motion to

10   revoke the discharge; we have the Chapter 7 trustee's

11   -- the remaining aspects of the Chapter 7 trustee's

12   objection to the debtor's claim of exemptions, which I

13   believe there is something on for today that might

14   resolve that; there is the question with respect to the

15   disposition of personal property that may or may not be

16   in Ms. Johnsson's possession, and then there's a

17   pending appeal.  And I think other than those things,

18   unless I'm missing a major task out there to be

19   covered, that's really what the case has left.

20           The -- I have no idea of when the appeal

21   will be resolved.  My understanding is it has been

22   fully briefed since late last year.  And I have no way

23   of finding that out, I can't pick up the phone and call

24   the district court.  I do have control over the other

25   aspects of the case, and it is my inclination that this

1    needs to move faster rather than slower, that we need

2    to wrap this up.  Time is quite literally -- as you

3    look at the trustee's report, time is money.  And the

4    longer this case remains open and remains pending,

5    especially in light of Ms. Johnsson's recent filings,

6    it clearly adds additional complication to the matter.

7           And when I say Ms. Johnsson's recent

8    filings, what I mean is her filings with respect to her

9    rent and the storage of personal property.  Very

10   interesting motions.  We'll talk about those in a

11   moment.

12          But it does underscore a point, which is as

13   this case continues on, it costs everyone.  And at this

14   point, it's costing the trustee as well because the

15   trustee's counsel is essentially working without a

16   source of compensation, as I can see it at this point,

17   other than potentially the personal property.  So

18   that's -- the source of compensation for additional

19   hours to be clear.

20          Okay, so that's my comment such as it is.  I

21   really strongly believe that this case needs to move

22   forward and get done on the fastest possible track, but

23   I also understand that I can't take that leap and then

24   give short shrift to the issues that have been raised

25   by the parties.  I have to go through those parties one

1    at a time to make sure that we're all on the same page.

2    As we go through them, however, you will probably see

3    me revert to that belief where I'll say to you, This

4    needs to get done, this needs to be resolved.

5            Does anyone have any general comments to

6    make with respect to what I've just said before I take

7    up the matters that are scheduled for today?

8            MS. STEEGE:  No, your Honor.

9            MS. JOHNSSON:  I do.

10           THE COURT:  Ms. Johnsson, yes, please.

11           MS. JOHNSSON:  First of all, I do not agree that

12   right now the fastest possible track is what is

13   necessary.  I have been handed the trustee's status

14   report on May 1st, as you were handed it as well.  I

15   have many open issues that the trustee is failing to

16   comply with:  Failing to comply with discovery, failing

17   to provide even basic information about which attorneys

18   are authorized to bill and when.  I have filed a couple

19   of motions, as many as I can generate by a point in

20   time, but there are many more to file.  The trustee has

21   committed perjury in her status report, I would like

22   time to be able to brief that and get that before this

23   Court.  I have not had time to prepare a filed

24   response, but I am telling you that page by page there

25   are things that I do want to respond to and that I do

 1    not think the trustee's status report in any way

 2    reflects a valid view of what has happened in this

 3    case.

 4              However, the trustee has been absent for two

 5    years and was ordered to be in this courtroom by you,

 6    and even this morning while you were in recess, she's

 7    sitting here talking about she should have been

 8    somewhere else, but because she's ordered to be here,

 9    she has to show up.  I'm sorry, but I need time to

10    respond to this and to put together all of the

11    information that needs to be in front of this

12    courtroom, including the malpractice suit against

13    Jenner & Block for their professional services, if

14    that's what we call it.

15         THE COURT:  Well, Ms. Johnsson, you're entitled

16    to your belief, but your belief does not necessarily

17    equate to a cognizable claim that this Court can do

18    anything about.  What this Court has to do is rule

19    within the confines of the law that's in front of it.

20    I'm bound by the bankruptcy law, the bankruptcy rules,

21    and the local rules that are applicable here.  What

22    this Court -- the tasks this Court has to complete is

23    the tasks that I have set out.

24              What you would like to do -- and you've done

25    on a number of occasions -- is attempt to sidetrack

1    that main task with -- perhaps justified, perhaps

2    not -- your beliefs on the propriety of the trustee's

3    actions and the like.  There will be a time when the

4    trustee files for and asks for compensation at the end

5    where you can be heard with respect to that, but I'm

6    not -- and I want to make sure that you understand

7    that -- I'm not allowing you to sidetrack the essential

8    tasks of this Court with those beliefs.

9            MS. JOHNSSON:  I'm only asking for time to

10   respond to the trustee's report and to put that in

11   writing.

12           THE COURT:  Ms. Johnsson, there is no response to

13   the trustee's report.

14           MS. JOHNSSON:  So it's just taken as fact?

15           THE COURT:  No, it's not taken as fact.  It's not

16   taken as anything.  The trustee's report is simply no

17   different than statements that are made in this court

18   when I have parties at the lectern and I'm asking about

19   the status.  It is a report on status.

20                You have misunderstood since the beginning

21   of this case -- when I have explained to you that that

22   is not evidentiary in nature, you tried to raise

23   evidentiary objections to the statements that parties

24   have made at the lectern.

25           MS. JOHNSSON:  I just don't understand whether

1      there ever will be an evidentiary trial.  I've waited

2      for four years for an evidentiary trial.

3          THE COURT:  And you're not going to wait much

4      longer, Ms. Johnsson, and that's what my statement is.

5          MS. JOHNSSON:  Okay.  That's good then.

6          THE COURT:  So we're going to have an evidentiary

7      trial, and it's going to be on 7/27.  It's going to be

8      the issues that the trustee has raised, and you need to

9      confine yourself to responding to the issues that the

10     trustee has raised.  I'm not going to allow this

11     adversary proceeding to be a fishing expedition.  I'm

12     not going to allow this adversary to be an opportunity

13     for you to rehash the issues that you've brought up

14     constantly in this court -- the issues with your

15     ex-husband, the issues with the trustee.

16          You must respond to the allegations of the

17     trustee in that complaint.  That's what the trial is

18     for, that's where we will take evidence, and we will

19     stay constrained on that issue, and I will resolve that

20     issue and I will do it as quickly as I possibly can.

21          MS. JOHNSSON:  Now we're talking about the

22     adversary complaint?

23          THE COURT:  That's exactly what we're talking

24     about.

25          MS. JOHNSSON:  Okay.  I'm just trying to make

1    sure I understand what we're talking about.

2         THE COURT:  But let's be clear, again,

3    Ms. Johnsson, you're entitled to file what you wish to

4    file, but that doesn't mean that when you file a

5    document that there is a cognizable claim under the

6    law.  You may take certain positions, you may ask for

7    certain things, but that doesn't mean that this Court

8    has the authority to give you what you're asking.  It

9    doesn't necessarily mean that I'm going to agree with

10   what you're doing on these particular items.  We will

11   go through -- you file what you will file, and we will

12   deal with those as we go, but just because you have a

13   certain belief doesn't mean that you are entitled to

14   see that belief manifest itself through orders of this

15   Court.  You can ask for things.  If I can find a

16   cognizable claim in what you asked -- and I've always

17   strived very hard to look through what you file and see

18   what it is, in the essence, you may be trying to do and

19   give you appropriate relief.  But sometimes what you

20   ask there's simply no relief available, and I want you

21   to understand that now.

22         So file what you wish to file, but we're

23   going forward with four -- essentially the four things

24   that are before this Court:  One is the appeal, and I

25   can't control that.  We're going to deal with the 727

1   adversary, we're going to deal with the objection to

2   the claim of exemptions, and we're going to deal with

3   the issue of the personal property that may or may not

4   be in Ms. Johnsson's possession.

5                For today --

6        MS. JOHNSSON:  We're not dealing with the

7   personal property in Rittmanic's possession?

8        THE COURT:  No, we're not.

9        MS. JOHNSSON:  Okay.

10       THE COURT:  So, let's be clear.  What do we have

11  today?  All right, we have the general status; we have

12  the continued hearing on the objection to the claim of

13  exemptions.  And I'm simply going down -- if you have

14  the call sheet for today, I'm going in the order that's

15  on the call sheet.

16                We have -- and, Ms. Johnsson, I haven't seen

17  that you've responded to this, but we have the Court's

18  order to show cause why the debtor should not be held

19  in contempt.

20       MS. JOHNSSON:  I'm sorry, I don't know what that

21  is.

22       THE COURT:  We have the trustee's motion

23  attempting to resolve the claim of exemption issue.  We

24  have Ms. Johnsson's motion for clarification of the

25  parties.  We have Ms. Johnsson's emergency motion to

```
 1    compel the trustee to pay her rent.  We have an amended

 2    motion that I believe was filed this morning which I

 3    have not seen.  We have the 727 adversary, and we have

 4    Ms. Johnsson's motion to strike the complaint.  That's

 5    what I see on the call sheet going down.

 6              I think that we can handle the exemption

 7    issue first, since it is in fact after status the first

 8    thing that's on the call, but that also involves I

 9    guess the fourth thing on the call which is the motion

10    to resolve the balance.

11              So let's hear from you, Ms. Steege.

12         MS. JOHNSSON:  Your Honor, there is another

13    motion that I think is still pending.  Can I get that

14    on the list?  Which is my motion to obtain transcripts

15    and to have an extension of time for the redacting of

16    those transcripts once I actually do receive the

17    transcripts.

18         THE COURT:  That's not on the call that I can see

19    today.

20         MS. JOHNSSON:  Well, it was on the call for the

21    last time we were in front of you, and you ended the

22    session.  So I don't know where that one stands.  I

23    thought that you were just carrying everything over to

24    today.

25         THE COURT:  What is the request you're talking
```

1    about again, Ms. Johnsson?

2         MS. JOHNSSON:  Do you want me to get the docket

3    number?

4         THE COURT:  Just tell me what you said a moment

5    ago.

6         MS. JOHNSSON:  So I have a motion to obtain

7    transcripts and to have an extension of time for the

8    redacting of those transcripts once I actually obtain

9    the transcripts.

10        THE COURT:  Well, obtaining the transcripts is

11   something that you do with the court reporter.  If you

12   want a transcript, you go to the court reporter, you

13   order it and you pay for it.

14        MS. JOHNSSON:  I was told that the transcripts

15   are already on the record, that they've already been

16   ordered by somebody and that they're already paid for.

17   I was given notice by this Court in the mail that I had

18   X amount of days to redact them.  I am trying to get a

19   copy of them, and I'm trying to then see whether they

20   need to be redacted.

21        THE COURT:  If there are transcripts that have

22   been filed and are a part of the record of this court,

23   then you go to the Clerk's Office and you ask for a

24   copy of that.

25        MS. JOHNSSON:  I did do that, and I was told that

1    they were not available.  And so I don't know what to

2    do, which is why I filed a motion.

3          THE COURT:  Ms. Steege, do you have any insight

4    on this?

5          MS. STEEGE:  Yes, your Honor.  The court reporter

6    doesn't just -- there is a period of time -- once a

7    transcript is ordered, notice that it's been typed up

8    is placed on the docket.  But there a period of time

9    where folks from the public, if they would want that

10   transcript, need to contact the court reporter and pay

11   for a copy of it.

12          And I think that what Ms. Johnsson is saying

13   is that she doesn't want to pay for the copy of it, she

14   wants Ms. DeFini's office to give her a free copy of

15   it.  And I don't think that she's -- I can't speak for

16   her, but I don't think she's obligated to do that.

17         MS. JOHNSSON:  The notice that I received in

18   writing said that I could go to the Clerk's Office and

19   I could view a copy of it.  I have tried to go to the

20   Clerk's Office and view a copy of it.

21         THE COURT:  Do you have a copy of that notice

22   with you, Ms. Johnsson?

23         MS. JOHNSSON:  I do not.

24         THE COURT:  Okay.  Then I can't --

25         MS. JOHNSSON:  I didn't even know when this

1    motion was going to be heard.

2        THE COURT:  You just told me you presumed the

3    motion was going to be heard today.

4        MS. JOHNSSON:  And if you would like, I could

5    probably go through my files and I bet I do have copies

6    of the notices.

7        THE COURT:  Well, it's not on the call for today,

8    and I'm not going to deal with it today.  I will tell

9    you this:  With respect to the handling of transcripts,

10   when transcripts are initially filed or noted as filed

11   on ECF, I do not believe that they are available to the

12   public through the ECF system at that point because

13   they're still subject to the redaction process.

14   There's a 60-day, or whatever the time period is, where

15   it can't be pulled down directly from ECF.  You have to

16   go to the court reporter to get that document, and you

17   have to pay for your copy.  If that's what you wish to

18   do, you may, in fact, do that.  As for any request for

19   additional time for redaction, that's denied.

20        All right.  So let's move on.  So we're back

21   to the --

22        MS. JOHNSSON:  So it's denied?

23        THE COURT:  Ms. Johnsson.

24        MS. JOHNSSON:  I'm sorry, I'm just trying to

25   understand.  So now, has my motion been denied?

1          THE COURT:  Your motion has been denied,

2     Ms. Johnsson.  We're moving on.

3               All right.  So let's go back, Ms. Steege, to

4     where we were, which was your motion with respect to

5     the remaining aspect of your objection to the debtor's

6     claim of exemptions.

7          MS. STEEGE:  Yes, your Honor.

8               By way of background -- and this is in the

9     motion, so if you don't need it repeated, just let me

10    know.  We had filed an objection to the exemption that

11    Ms. Johnsson had claimed in a property settlement

12    arising out of her dissolution proceedings with her

13    ex-husband and with any alimony beyond that necessary

14    for her support.  Illinois law only exempts alimony

15    reasonably necessary for the debtor or the debtor's

16    dependents' support.  We have filed that objection.  It

17    was granted, and your Honor entered an order with

18    respect to any property settlement.  With respect to

19    alimony, whether Ms. Johnsson was to receive alimony or

20    not was not a known fact at the time of that hearing on

21    the objection, and she was represented by counsel at

22    this matter.  Ms. Ebner worked with me, we prepared an

23    order, we continued it.

24               The alimony issue has been decided by the

25    state court.  It is up on appeal, as I understand,

1    because Ms. Johnsson has appealed it.  But as we

2    discussed at the last hearing, I think the beginning of

3    April, to try to bring this matter to a head, we're

4    proposing that this be concluded because there isn't

5    any alimony to talk about right now.  Theoretically, I

6    guess we could talk about the alimony she received

7    during the case, but I'm not making a claim to that.

8    And, you know, if something happens with the appeal

9    that's, you know, shocking, we'll come back in here,

10   but, you know, I would anticipate that there isn't

11   going to be any alimony for you to decide.

12           What we did, per what we had discussed at

13   the last hearing, is we sent Ms. Johnsson -- and we

14   attached a correspondence, a proposed order along with

15   a letter and a copy of the objection and the original

16   order and everything else, so she had it all.  She

17   responded, and her response is there saying she didn't

18   like certain things about the order, what I could

19   gather she didn't like.  We made changes to try to

20   accommodate what we understood were her concerns, sent

21   it to her again.  She again indicated that she was not

22   interested in agreeing to this.

23           I did ask her what she thought was left for

24   your Honor to decide.  I did not get a response, and so

25   we told her that if we didn't hear from her by the end

1    of April, we would go ahead and we would file a motion

2    asking for the entry of the order.  So that's where we

3    are.

4         THE COURT:  Well, let me ask you this,

5    Ms. Steege -- this is your objection, you raised the

6    objection with respect to the debtor's claim of

7    exemption -- why is it you need to proceed by motion at

8    all on this?  Why can't you simply withdraw the

9    undecided or undetermined --

10        MS. STEEGE:  I can do it that way if that's

11   easier for your Honor.  And we had discussed this

12   procedure at the last hearing, so we wanted to follow

13   through with what we had done.  That would be one way

14   to do it.  I mean, there really isn't anything for your

15   Honor to decide because she didn't get an alimony

16   award.

17             So we'll withdraw that part of our

18   objection.  The original order with regard to the

19   property settlement stands, and that's what the ruling

20   is on the motion.  That's why -- because it covered

21   both things, it's a little weird to withdraw half of

22   it, but if that can be made clear in a minute order,

23   I'm happy to do it that way.

24        THE COURT:  Well, the fact is that when a party

25   is seeking some form of relief from the court and that

1  party wishes to stop seeking that relief, whatever it

2  may be, it doesn't really afford the counter-party an

3  opportunity to negotiate with respect to the terms of

4  that withdrawal.  It is simply withdrawn, unless the

5  counter-party has some sort of claim in response.  And

6  there is no claim in response that is cognizable with

7  respect to this.

8       MS. STEEGE:  As long as we can just withdraw --

9  there were two requests for relief, one of which was

10  granted.  We will withdraw the request for relief with

11  regard to the alimony.  And I could make that clear on

12  a minute order withdrawing it, if that would be

13  acceptable to your Honor.

14       THE COURT:  I think that's fine.  I don't know if

15  the U.S. Trustee has anything --

16       MS. GLEASON:  I think that is fine.

17       THE COURT:  Just, Ms. Johnsson, so you

18  understand.  The fact is it was a little unusual for

19  the trustee to proceed by motion when what she could

20  simply have done is withdrawn the unruled upon aspects

21  of her objection.  I think she was concerned that in so

22  doing it might seem like she was withdrawing the entire

23  objection, so she's simply, as a courtesy to you,

24  attempting to do this in a way that provided the

25  maximum amount of clarity in the process.  But,

1   frankly, to proceed by motion and order is really not

2   necessary.  I can do a minute order that clarifies the

3   terms of the withdrawal, and it simply puts to rest one

4   issue of the four issues that I still have out there.

5   So there is no reason right now not to do that.

6         MS. JOHNSSON:  Do I get to say anything?

7         THE COURT:  You can certainly say something.

8   But, again, you really don't have any issue here.  But

9   go ahead.

10         MS. JOHNSSON:  First of all, I would like to

11   point out for the record that Ms. Steege is incorrect,

12   I did not receive any alimony during the case -- during

13   the course of this case.

14         THE COURT:  All right.  Ms. Johnsson, let's be

15   clear.  I'm not going into the factual statements that

16   are here.  This is not a fact hearing, all right.  This

17   is not -- I've said this before:  What I'm asking you

18   is do you have a problem with the procedure, and I

19   can't see that you possibly could have.

20         MS. JOHNSSON:  I do have a problem with the

21   trustee making miscorrect statements and those going

22   into the record and then not being allowed to get the

23   transcript because I have no money and then not being

24   allowed to have time to redact the transcript.  So,

25   yes, I am objecting right now.

1    THE COURT:  All right.  The objection is

2    overruled.

3           Ms. Steege, your claim of exemptions will

4    be --

5    MS. JOHNSSON:  May I say anything else?

6    THE COURT:  No, you may not.  You've had your

7    opportunity, and you chose to use it unwisely.

8    MS. JOHNSSON:  Unbelievable.

9    THE COURT:  Ms. Steege, your objection to the

10   claim of exemptions to the extent that it has not

11   previously been resolved with a previous order, and

12   that order will remain the order of the Court with

13   respect to the relief in the motion, it will be deemed

14   withdrawn.  We'll deal with it in a minute order.

15   MS. STEEGE:  Would you like us to prepare the

16   minute order?

17   THE COURT:  If you could, please, I would

18   appreciate that.

19   MS. STEEGE:  We'll do so.

20   THE COURT:  All right.  So that --

21   MS. JOHNSSON:  Will I have a chance to review the

22   order before it's submitted?

23   THE COURT:  No, Ms. Johnsson, you may not.

24   MS. JOHNSSON:  Lovely.

25   THE COURT:  Again, Ms. Johnsson, you

1    misunderstand what's going on here.  This --

2        MS. JOHNSSON:  So when it's not even provided to

3    me in writing, it makes it very hard for a pro se

4    debtor who is not an attorney to be able to understand

5    things.

6        THE COURT:  Ms. Johnsson, I've explained it to

7    you.  The fact that you're choosing not to listen to my

8    explanation is your choice.

9        MS. JOHNSSON:  I'm just trying to make sure that

10   I have it in writing so I can review it later.

11       THE COURT:  All we are doing, Ms. Johnsson, is

12   having the trustee withdraw the unruled upon aspects of

13   her objection.  That's all that's happening here.

14           And, Ms. Steege, to be clear, on your minute

15   order, just provide that directly to the Court.  I

16   don't want any delay with review by Ms. Johnsson.

17       MS. STEEGE:  We'll do it by --

18       MS. JOHNSSON:  The open objection had to do with

19   the marital settlement agreement.  It is specifically

20   in writing, it is the second paragraph of your order,

21   and it has not a single word about alimony in it.

22       THE COURT:  All right, Ms. Johnsson, this is your

23   first warning about talking out of turn.  We're done

24   with this particular issue.  As you have learned at

25   previous hearings, when you talk out of turn, you'll

1    get a warning, you'll get a second warning, and then

2    the third occasion the gentlemen in the blue blazer in

3    the back of this hearing will escort you out of the

4    courtroom.

5            All right.  So we're back on the record with

6    respect to this particular issue.  I think I have

7    resolved it.  I think that the record is clear that

8    Ms. Steege is withdrawing the unruled upon aspects of

9    her claim of exemption, so that will resolve the status

10   that was set on that particular objection.

11           And with respect to your motion, it's

12   essentially moot, and I will treat it as mooted by the

13   withdrawal of the objection.

14       MS. STEEGE:  (Nodding).

15       MS. JOHNSSON:  I'm sorry, which motion is moot?

16       THE COURT:  Her motion seeking to have an order

17   doing essentially what we're doing through the process

18   that is more direct.

19           All right.  So let's go to the order to show

20   cause why the debtor should not be held in contempt.

21           So, Ms. Johnsson, apparently you did not

22   receive the copy that the Court mailed you with respect

23   to this order, but let's talk about what it is, and

24   that is this:  You have on more than one occasion used

25   the Court's draft order to follow e-mail box to copy

1    the Court into correspondence that has nothing to do

2    with draft orders to follow.  The draft order to follow

3    e-mail box is for delivery of orders, that's what it is

4    for.

5         MS. JOHNSSON:  When did I do that?

6         THE COURT:  You did it initially preceding

7    March 11th, at which point on March 11th we sent you an

8    e-mail saying do not use the Court's draft order to

9    follow e-mail box.  We sent you a link at that point to

10   the rules that state that you will be held in contempt

11   if you do that.

12        MS. JOHNSSON:  That was when I was responding to

13   the order that Ms. Steege had in front of you regarding

14   exemptions.

15        THE COURT:  It is not a negotiation e-mail box,

16   Ms. Johnsson.

17        MS. JOHNSSON:  I wasn't trying to negotiate.  I

18   was responding to what she told me she sent to you.

19        THE COURT:  You don't respond by copying in the

20   Court.  That's not the way this works.  This is a

21   method of transmittal only.

22        MS. JOHNSSON:  So when she sends you something

23   that she says is an agreed order from me, I'm not

24   allowed to tell you that it's not from me?

25        THE COURT:  Let's see what you did this time,

1    Ms. Johnsson.

2         MS. JOHNSSON:  Yeah, I --

3         THE COURT:  "Landon, it seems to me you're

4    addressing the wrong thing and I object to being

5    misquoted or partially quoted out of context, as you've

6    done in your order draft.  There is no need to quote me

7    at all.  And I have never been provided with the court

8    reporter transcripts to determine the extent to which

9    you and Ms. Steege may or may not have misquoted me."

10             That is a completely inappropriate

11   communication to have with the Court in the draft order

12   to follow --

13        MS. JOHNSSON:  They were quoting me in an order

14   that they put in front of you.

15        THE COURT:  You can respond to them,

16   Ms. Johnsson, but not include the Court.

17        MS. JOHNSSON:  But they told me they sent it to

18   you.

19        MS. STEEGE:  We did not, your Honor.

20        MS. JOHNSSON:  How am I supposed to know whether

21   they sent it to you or not?  They told me they sent it

22   to you.

23        THE COURT:  Ms. Johnsson, you are hereby excluded

24   from using the Court's draft order to follow e-mail

25   box.  All right?

1          MS. JOHNSSON:  Okay.

2          THE COURT:  If you use it again, you will be

3     found in contempt.  I will have an order to show cause

4     hearing as to why I should not sanction you further.

5               At this point, I do not believe that a

6     monetary sanction will have any effect given your

7     financial circumstances.  So I will consider if you

8     further use the Court's draft order to follow e-mail

9     box, whether I should not strike some of the documents

10    that you filed in this case.  So govern yourself

11    accordingly.  I will conclude the order to show cause.

12              All right.  Let's move down to the next item

13    on the agenda, and that is Ms. Johnsson's motion for

14    clarification of the parties.

15              So, Ms. Johnsson, I've taken a look at your

16    motion.  This is -- I gave you an idea of where I was

17    going with this when I said to you earlier in my

18    general comments that sometimes you may have a belief,

19    but your belief cannot necessarily be ruled upon

20    because your belief does not present a cognizable claim

21    upon which this Court can order -- order some form of

22    relief.

23              You're asking me to clarify the parties.

24    And I read through your motion, and essentially what

25    you're saying is you don't know what attorneys or what

1    trustee that you're dealing with.  Your confusion with

2    respect to the system is something that you should

3    resolve by having counsel advise you.  If you choose

4    not to have counsel advise you, then you are on your

5    own with respect to that.

6         MS. JOHNSSON:  Am I to be allotted some money to

7    have counsel to advise me?  Where would I get counsel?

8         THE COURT:  Ms. Johnsson, I've given you a fair

9    amount of money in the last several months on your

10   motions.

11        MS. JOHNSSON:  And I've paid rent on the storage

12   of the bankruptcy estate assets.

13        THE COURT:  We're not talking about that motion

14   right now, Ms. Johnsson.  We're talking about your

15   request for clarification of the parties.

16             The fact is that this presents no cognizable

17   claim upon which the Court can grant relief.  The

18   trustee has counsel.  The trustee may appear directly

19   or through counsel.  That's the way legal proceedings

20   work.  And the fact that she has counsel working for

21   her is something that predates my being assigned to

22   this case.  This is --

23        MS. JOHNSSON:  All of the orders were by you.  No

24   orders before you were ever approved to have Catherine

25   Steege having counsel.

1              I've provided an affidavit to add clarity to

2    my motion for clarification of the parties.  The first

3    order was entered by you on June 26th, 2012.  Before

4    that date, there were no attorneys -- Jenner & Block or

5    any other place -- that were allowed to be representing

6    the trustee in this case.

7              Even Ms. Steege was not allowed to represent

8    Ms. Steege, but she finally got that order in front of

9    you June 26th, 2012.  That was only then for the -- for

10   Catherine Steege and for Lauren Sylvester Berheide o be

11   counsel to Catherine Steege.  Only those two individual

12   attorneys were named.

13             The next order that was in front of you is

14   questionable whether it was in front of you or not, I

15   was not provided any notice of that order, and it

16   wasn't even prepared by Jenner & Block or Ms. Steege.

17   It was prepared by Lauren Sylvester Berheide when she

18   was working for a different law firm, Freeborn &

19   Peters, and in that she filed a motion to withdraw.

20       THE COURT:  Ms. Johnsson, I'm going to have to

21   cut you off simply because you cut me off.  And I've

22   warned you not to interrupt me.  I'm not going to

23   consider this to be your second warning, although,

24   once, again, you did interrupt me while I was speaking,

25   and so you need to be cautious.  Your second warning is

1    not far away.

2             The -- perhaps I misspoke, perhaps I did

3    not, but the question of when Ms. Steege retained

4    counsel is, frankly, not of great importance here.

5    Let's get back to the main point.  The main point is

6    this:  Clarification of the parties is not a cognizable

7    claim under the system.  You're asking for essentially

8    assistance in understanding the process.  I give you

9    that every time you appear.  You choose to ignore what

10   I tell you to do.  In fact, in some instances when I've

11   perhaps gone further and tried to give you advice,

12   you've been very, very hostile to that.  So I'm doing

13   my best, but I can't do what you're asking here because

14   it simply is not a legal claim.

15             The motion for clarification of the parties

16   is denied.

17        MS. JOHNSSON:  So she's not going to have to

18   explain what roles people were in and why she was in

19   defiance of court order because she hasn't even filed

20   anything for fees, so we just leave these fees standing

21   out there as if they are valid when really they're not?

22   And I don't have any means by which to go after that

23   because there is no motion filed.

24        THE COURT:  A good example of your choosing not

25   to listen to me is what you just stated right now.

1   Because if you had chosen to listen to me when I spoke

2   to you earlier, I said there will come a time in this

3   case when Ms. Steege must apply for compensation, and

4   many of these issues will be addressed then.  But this

5   is not the time.  So, once again, I've given you the

6   guidance, but in your mind, you don't hear it.

7        MS. JOHNSSON:  Well, no.  It says set for hearing

8   today.  Her motion said set for hearing today.  I'm

9   assuming that the documents in there --

10       THE COURT:  There is no motion with respect to

11  her fees set for hearing.  There is a status report

12  which the Court requested.  That's all that is here.

13       MS. JOHNSSON:  On the notice of the status report

14  it said it was set for a hearing today.

15            I don't know that that's not something that

16  is allowable to do.  That's what they sent to me.

17  That's why I was prepared to do this.  That's what I

18  thought I was doing.  If we're not having that hearing

19  today, that's fine, too.

20       THE COURT:  There is no hearing --

21       MS. JOHNSSON:  Okay.

22       THE COURT:  -- on that particular issue today,

23  Ms. Johnsson.  Your motion for clarification of the

24  parties is denied with prejudice.

25            Now let's move on to the motion with respect

1    to the request to pay rent.  My understanding is,

2    Ms. Johnsson, that you amended that motion this

3    morning.  I have not seen your amended motion, nor will

4    I --

5         MS. JOHNSSON:  I amended it yesterday.

6         THE COURT:  Nor will I review a motion that has

7    been filed in advance of the hearing less than three

8    days.  And we've talked about that, and you've been

9    warned repeatedly about that.

10             So I accepted your emergency motion.  I

11   granted your application.  I set the hearing for today.

12   What you wanted to have heard by way -- before me by

13   way of writing has been put before me.  Any attempt to

14   change that at the last minute isn't going to change

15   what I've read.  If you have something you would like

16   to add today orally, you certainly may, but I'm not

17   going to read the document that you've been told

18   repeatedly not to file.

19        MS. JOHNSSON:  And there's only two revisions to

20   it anyway, so -- and I also served a revised notice

21   because I had on the original notice said that I was

22   serving the landlord, but I revised that as well.  So

23   those were the things that I filed yesterday when I

24   filed the amended emergency order.  It's the first time

25   that I've been in an emergency order process.  My

1    understanding -- you know, I got in trouble with the

2    Clerk's Office because they said, Oh, no, that hearing

3    should have happened on Friday.  And I was trying to

4    explain to them that we had set it for hearing today.

5              But that's okay, I can verbally explain what

6    those changes are.  There's only two paragraphs that I

7    changed.

8         THE COURT:  Well, it is your motion,

9    Ms. Johnsson.  I will hear from you first.

10        MS. JOHNSSON:  Okay.  So in the trustee's status

11   report, one of the open items as we have been -- it has

12   been open since the trustee's settlement agreement was

13   signed on April 30th, 2013, and dating back to my

14   motions then in April and May of 2013, I have been

15   trying to either get a liquidation or an abandonment of

16   the assets that are in my possession.

17             I have been forced to house those assets for

18   44 months.  I have brought this before the Court and

19   tried to have them auctioned off, tried to have the

20   right to sell them, tried to do anything to move them.

21   And I have been repeatedly told I am not allowed to do

22   that and that it is actually the trustee's job to do

23   that.  And I have been reprimanded in this courtroom

24   for trying to do something about those assets.

25             For 44 months I have not requested a dime

1   from this courtroom to house those assets, but I have

2   been told repeatedly that I can't move them, I can't

3   sell them, I can't list them for sale.  I can't even

4   get an appraisal.  I was reprimanded not to do that as

5   well.

6            I have provided from my original bankruptcy

7   filing on September 21st, 2011, and every opportunity

8   that I have had in front of this Court and in every

9   pleading, I've provided complete inventories of every

10  item that I can find.  And where I have an invoice, I

11  have written actual next to it and given the dollar

12  amount from the invoice.  And where I didn't have an

13  invoice readily available, I wrote estimate next to it.

14           And in particular, just with respect to the

15  paintings that are in my house, the antiques that are

16  in my house, and the rugs that are in my house -- this

17  is not counting any other furniture that is not antique

18  or anything like that, just counting those three

19  things -- the original cost on those assets was almost

20  $40,000.  That amount has been in front of Ms. Steege

21  since September 21st, 2011, and it's been attached to

22  every pleading I have had in this courtroom trying to

23  get the right to be able to liquidate those assets.

24           You, on April 1st and April 7th, told

25  Ms. Steege that she needed to decide what she was going

1    to do with those assets.  And in her status report she

2    again continued to not decide.  She stated that she was

3    not going to sell.

4            Not doing something is not a decision to do

5    something.  It's a decision to continue to have

6    inaction, as we've had for the last four years.

7            I am now out of ability to do this.  My

8    landlord is elderly.  She had knee replacement surgery

9    down in South Carolina.  All of a sudden now she is

10   being told -- because I told her I think that the Court

11   is going to do something here, I think the Court is

12   finally going to bring about some justice.

13           I'm still waiting for justice.  I'm still

14   waiting for something to happen.  But in the meantime I

15   have been telling this Court, I can't pay my rent, I

16   don't even have enough money to eat.  I'm eating only

17   two meals a day.  And then this Court made fun of me as

18   if I wasn't doing two meals a day or something, I don't

19   know.  But anyway --

20       THE COURT:  Ms. Johnsson, now I will interrupt

21   you.  I never made fun of you, and I don't know what

22   you're talking about.

23       MS. JOHNSSON:  Okay.  We could go to the

24   April 1st transcript, where you brought it up several

25   times, and I thought maybe you were making fun of me.

1    Maybe there was some other reason that you were

2    bringing up that I only had two meals a day.  I don't

3    know why.

4         THE COURT:  Ms. Johnsson, I think what you're

5    referring to is the comments that I made when I was

6    angry at the trustee and I was ruling in your favor on

7    things, and I stated things that you had said in order

8    to grant you relief.  That is not making fun of you.

9    That is adopting your position.

10        MS. JOHNSSON:  Maybe if I was eating three meals

11   a day, I would have a better sense of reality.  I don't

12   know.  But I'm telling you this --

13        THE COURT:  Well, Ms. Johnsson, let's pause for a

14   moment.  Your hold on reality is an issue that we're

15   going to get to in a minute.

16        MS. JOHNSSON:  Okay.

17        THE COURT:  Now go ahead.

18        MS. JOHNSSON:  However, I have been informing

19   this Court since February that I am now in a dire

20   situation.  I have asked for my exemption monies.  I

21   been denied my exemption monies.  I have been told I

22   have to refile my schedule to get those exemption

23   monies.  And if I do that, then I know I will have

24   another battle with Jenner & Block.  So I am just out

25   of money to be able to do that.

1          But in the meantime, my landlord has

2     listened to me and thought that justice was going to

3     come as well.  I provided them copies of transcripts if

4     they wanted it, and they said, no, they believed me,

5     but they really needed the money.

6          Now they have given notice as of May 11th.

7     And I asked them to give me notice in writing.  They've

8     talked to me a couple of times on the phone, and I

9     asked them, Please give me notice in writing, I need to

10    be able to put something in front of this Court.

11         So finally they gave me something in

12    writing, which then I filed the emergency motion.  I

13    did not realize that they were going to only give me 20

14    days, but they've only given me 20 days before they

15    need to have their place back.  And I certainly

16    understand where they're coming from.

17         So part of my amended was -- one of the

18    pieces of relief that I had asked for was that I asked

19    that you put a stay on -- if you're not going to grant

20    rent, that you at least put a stay that allows me time

21    to get an appraisal on the assets and try to figure out

22    if I can sell them or something like that, because

23    Ms. Steege has already gone on record on April 7th

24    saying that she expected that there would be a

25    valuation fight, given that her valuation from the

1    appraiser she brought in -- another Irish connection,

2    Mr. Sean Susanin --

3         THE COURT:  All right.  Let me now stop you,

4    Ms. Johnsson, because this is the point where we're

5    going to talk about your hold on reality.

6              You have some fanciful theories that you

7    have stated in court and you've put in the documents.

8    I don't --

9         MS. JOHNSSON:  My theories were presented to me

10   by other people, and I reported them to this Court.

11        THE COURT:  Ms. Johnsson, I can find nothing that

12   gives any credence to the allegations that you are

13   making.  And I am warning you now that if you continue

14   to make these allegations, you're opening yourself up

15   to possible liability.

16        MS. JOHNSSON:  I told you that they were rumors

17   that I heard.  I was not making allegations.  I told

18   you that they were rumors that I heard.  Mr. Sean

19   Susanin is indeed Irish.  He told me that he was Irish.

20        THE COURT:  And speaking as an Irish judge, I

21   would like to know what that has any bearing on.

22        MS. JOHNSSON:  I don't know.  I'm Irish also.

23        THE COURT:  All right.  So, Ms. Johnsson, stop

24   it.  Cut it out.  You know better.

25        MS. JOHNSSON:  I don't know better.

1        THE COURT:  You do know better.

2        MS. JOHNSSON:  I'm not an attorney.

3        THE COURT:  You do know better.  You know better

4   than to slander someone, to make unfounded allegations,

5   and you continue to do it.

6        MS. JOHNSSON:  I'm not slandering anyone.  I told

7   you that these rumors were told to me, and I reported

8   them here.  And you said that I should maybe report

9   them to the FBI.  And I did talk to --

10       THE COURT:  What I said to you, Ms. Johnsson, is

11   we're not an investigatory agency.  If you have a

12   cognizable claim with respect to a violation of the

13   law, go to a law enforcement agency.

14       MS. JOHNSSON:  And I talked to them, and they

15   said, What did the judge say?  And I said, The judge

16   acted like it was no big deal.  And they said, There's

17   nothing we can do.  So here I am.

18       THE COURT:  All right.  So once again,

19   Ms. Johnsson, I'm telling you right now, put it to rest

20   because it does not help you, it only hurts your claim,

21   to continue to make these unfounded allegations.

22            Let's move on with your presentation on the

23   motion.

24       MS. JOHNSSON:  Okay.  So the -- Mr. Susanin came

25   into my place and walked through, and I showed him

1    everything that I had, and I explained to him things

2    like about the artists and how I -- two of the artists

3    that I have purchased over the years have become famous

4    and that one of them died.  And usually when a famous

5    artist dies, then their paintings are worth more than

6    you originally paid for it.  And the other one has

7    become famous, and his stuff is commissioned all over

8    the place.  And I bought actually one of his first

9    paintings, and so my bet is that that is also worth

10   more than I purchased.

11            And the rugs that I purchased, I was always

12   told by the rug merchants, who are prominent rug

13   merchants in the Chicagoland area, that if at any point

14   in time we ever needed to sell them, that they consider

15   those rugs to be an investment and they would buy them

16   back at least at purchase price.  However, I have not

17   contacted anybody and gotten anything in writing about

18   any of those things because I have been specifically

19   forbidden by this Court to do those things.

20        THE COURT:  All right.  I will accept at this

21   point, Ms. Johnsson, your belief that the assets that

22   you're holding are very valuable.  I don't need to hear

23   any more with respect to that.

24            Let's talk about the motion.  What is it

25   you're seeking, and why are you entitled to it?

1          MS. JOHNSSON:  Okay.  So I am not seeking

2     anything on my behalf.  I am seeking money on behalf of

3     my landlord who has been forced, through renting to me,

4     to house these assets as well.  They have rented to me,

5     and this is where I am housing the assets, and

6     everybody knows that that's where I have been housing

7     the assets for the last four years.  And certainly the

8     trustee at any point in time could have made the

9     decision to move the assets somewhere else.  But I

10    guess since I was paying the rent all the time and the

11    trustee had no cost of administration, the trustee

12    chose to leave it where it was.  But for the last three

13    months, since February of 2015, I have been in this

14    courtroom every chance that I have saying, I can't pay

15    my rent.  We all know that the assets are housed there.

16    I keep trying to get the assets sold.  She has had the

17    assets investigated.  It's the trustee's decision what

18    to do, and the trustee continues to not make a decision

19    to do something.  The trustee's decisions are clear.

20    All she can do is she can abandon or she can liquidate

21    or she can negotiate some settlement agreement I guess.

22    But, really, we're still looking for abandon or

23    liquidate, not to make a decision to not make a

24    decision.

25          THE COURT:  Ms. Johnsson, talk about the motion,

 1   what you're asking and why you're entitled to it.

 2       MS. JOHNSSON:  So the first thing that I'm asking

 3   for is I'm asking for the three months' worth of rent

 4   that is in arrears.  That decision to house the

 5   bankruptcy estate assets there has been made in default

 6   by the trustee.  I have said I'm not paying rent there,

 7   I have said that the assets are stored there.  She's

 8   investigating, seeing that the assets are stored there.

 9   She has made no decision to move the assets; therefore,

10   she is the one that needs to pay the rent at this point

11   in time.  I have not paid the rent, could not pay the

12   rent.  So I have included as an attachment my Exhibit A

13   to the motion for -- the emergency motion includes

14   $7,800 in back rent, plus the hundred dollars for each

15   month for being late, and then plus the accumulated 5

16   percent interest.  And I don't have that exact amount,

17   but it's on the spreadsheet and I can pull it out of my

18   files.

19           And then there's also the matter of June 1st

20   rent which -- because here we are May 20th, and you're

21   not sitting next week, so, you know, the first Monday

22   after you're back is June 1st, and they also have rent

23   due to them then.

24           I have no money to even eat, let alone pay

25   for movers, let alone move to some other place.  I have

1   no place where I can move to.  If I am required to move

2   because I haven't paid my rent -- which I think is the

3   landlord's just right, which is why I have removed my

4   request to put a stay on their just right -- then I

5   will live in a shelter and those assets will all be --

6   I don't know what will happen to them.  Maybe the

7   trustee will show up and take them on that day or --

8       THE COURT:  Ms. Johnsson, what are you asking,

9   and why are you entitled to it?

10      MS. JOHNSSON:  I'm asking -- I'm also saying that

11  the trustee has collected $130,000 on behalf of my

12  bankruptcy estate, and it appears that the trustee has

13  not planned to pay any of that to my creditors, but

14  would like it all to be paid to Jenner & Block for

15  their services.

16      THE COURT:  What are you asking, and why are you

17  entitled to it?

18      MS. JOHNSSON:  I'm asking for the trustee to pay

19  $15,987.50 in total to my landlord, Lucinda Lenhardt,

20  for the rental of the property at 740 Humboldt, in

21  Winnetka, Illinois, the vast majority of which has

22  already been incurred by the trustee's lack of

23  decision, and the next two months which the July and

24  August are my presumption that this case will not come

25  to a close, which now I've been told the next date

1    we're back here is July 27th, so my presumption is

2    correct that nothing further will be resolved before

3    that date.  So I think that we need to make sure that

4    these assets are housed and that the landlord who is

5    owed this rent gets paid the rent.

6            You know, the trustee has made the decision

7    to leave them there.  I have made this Court fully

8    aware that I have no money from which to pay rent and

9    that I have not been paying the rent.  And that

10   service, whether it was overpaid for or not, is no

11   longer in question.  The service was provided.  The

12   service was provided by my landlord, Lucinda Lenhardt,

13   in good faith and believing that this Court would

14   provide some money for it, as I totally informed them.

15   And I believed that that money would be forthcoming on

16   April 1st, and I told them that.  And I thought that

17   money would be forthcoming on April 7th, when

18   Ms. Steege was finally ordered to show up in court here

19   after two years of being absent, and again no money has

20   been awarded.  And I thought I might get some money

21   from my exemption money, but I don't even have any

22   money to file for that and it doesn't even cover one

23   month's rent which is still out there.

24           So I think at a minimum the 10,000 has to be

25   paid immediately, and I think that the other rent

1    should be paid until such time as I can pay them again,

2    which I have secured a job finally to start teaching

3    entrepreneurship at Loyola.  That job is secured, but

4    it doesn't start until August and it doesn't pay me

5    until September.  So at that point in time I can

6    continue to pay the rent, and I guess continue to house

7    the bankruptcy assets that, you know, nothing has been

8    decided on.  I would eventually like the right to be

9    able to try to sell them or to maybe file a motion to

10    compel the trustee to do her job and abandon them, but

11    I don't have time for any of that.  I'm about to be

12    evicted in 11 days.

13         THE COURT:  Ms. Johnsson, I think I've heard

14    enough.  You keep going into things that are not

15    related to the motion.

16              You said at one point, First, I'm asking,

17    which implies there is a second.

18         MS. JOHNSSON:  Can I get my sheet of paper so I

19    am giving the right amounts?

20         THE COURT:  You may.

21         MS. JOHNSSON:  Thank you.

22         THE COURT:  I've got -- just to be clear,

23    Ms. Johnsson, you don't need to tell me the numbers

24    that are in your spreadsheet or your page.  I've seen

25    them and I have them in front of me.  You --

1          MS. JOHNSSON:  I want to state those amounts for

2     the record.

3          THE COURT:  They are in the record, Ms. Johnsson.

4     You filed a motion, and they're attached to it.

5          MS. JOHNSSON:  Okay.  I was just -- in the court

6     transcript here.

7          THE COURT:  The transcript is only part of the

8     record before the Court.  The filings that you make are

9     part of the record as well.

10         MS. JOHNSSON:  May I still please pull my

11    document out?

12         THE COURT:  You may pull the document out, but I

13    am not going to let you sit and talk about all of these

14    amounts once again.  What I'm asking for is in addition

15    to the payment of funds, which you have very clearly

16    stated what you're looking for, what else are you

17    seeking by way of this motion, and why are you entitled

18    to it?  Not what you would like in the future, not what

19    you might file in a different motion.  What are you

20    asking for in this motion in addition to the payment of

21    funds, and why are you entitled to it?

22         MS. JOHNSSON:  I am asking for the payment of

23    funds of $15,967.50, of which I have provided Exhibit A

24    that gives a breakdown of how I calculated that amount.

25         THE COURT:  Ms. Johnsson, in addition to the

```
 1    payment of funds, what are you asking for, and why are

 2    you entitled to it?

 3         MS. JOHNSSON:  Any and all other such relief that

 4    you deem just and equitable.

 5         THE COURT:  All right.  I have now heard enough

 6    from Ms. Johnsson.

 7              Ms. Steege or your counsel, would you like

 8    to respond?

 9         MS. STEEGE:  Yes, your Honor.

10              First off, to kind of put this in

11    perspective, the location that we're talking about is

12    not a storage facility.  It is the home where

13    Ms. Johnsson lives, and she has lived at that home

14    since prior to the bankruptcy filing.  This is the

15    address that she filed her petition on, so this is a

16    location that she chose to live in and, in fact, she

17    has lived in this location throughout this time period.

18    She's not there to store property, she is there to have

19    a home.

20              So the question is, is there any provision

21    of the Bankruptcy Code that is going to allow a debtor

22    to come into a bankruptcy case, in a Chapter 7

23    bankruptcy case, and have the estate pay rent for the

24    debtor's living expense.  And I'm unaware of any Code

25    provision.  I've never seen a motion like this where a
```

1    debtor comes in and says through unfortunate

2    circumstances, because I have -- because the trustee is

3    holding money in my estate, I would like the estate to

4    pay my rent for a period of time until I get a job.

5            I don't think that she is entitled to that.

6    Legally, there is no legal point to that.  There isn't

7    any authority for that.

8            With regard to the idea somehow -- if we

9    step back and pretend this isn't her home and say this

10   is a storage facility -- which I would really question,

11   your Honor.  I mean I don't want to get into -- this is

12   a very nice location here in Winnetka.  It's a block

13   away from the lake.  This is not a storage facility.

14   It's a home that she has chosen to live in.  But if we

15   view it as a storage facility, what is she storing?

16   She's storing the furniture that she uses.  She's

17   storing the artwork that she apparently enjoys to look

18   at, and the rugs that she wants to have in her home

19   that she purchased prepetition.

20           And if we go back to what she claimed in her

21   bankruptcy schedules, she claimed this property as

22   exempt.  And I accepted what she said about that

23   property and didn't do anything with it because it was

24   exempt.  You don't abandon exempt property.  At least

25   it's not been my practice or understanding that a

1    trustee goes in and abandons exempt property.  You

2    accept the exemption by not objecting to it.

3             Now it's true that you can have a valuation

4    fight over property, and if you think that the property

5    is worth more than the exemption, you could seek to

6    administer it and pay in cash.  But we let her retain

7    this property.

8             The reason why the appraiser came into the

9    mix is because what she became focused on at the time

10   of the settlement was the artwork and rugs that she

11   claimed she owned, that was not marital property, that

12   was located in Mr. Rittmanic's home.  And she came into

13   court after your Honor approved the settlement not to

14   sell the stuff in her own home, that motion was to go

15   out and sell the stuff in Mr. Rittmanic's home.  And we

16   came in and we said, as we have said to her any

17   numerous times in any numerous e-mails that Mr. Kelly

18   sent to her and conversations we've had with her, and

19   as we said at the time of the hearing, if Mr. Rittmanic

20   has possession of personal property that you acquired

21   before the marriage or would not be considered marital

22   property under Illinois law, the settlement agreement

23   didn't cover it, then we would seek to sell it if it

24   made sense to do so, if it had value.  But you need to

25   provide us --

1          I can't just -- I mean I don't have the

2    authority, and I have to present things that your Honor

3    will approve.  I can't just come into court and demand

4    to go through Mr. Rittmanic's home and start ripping

5    things out based on Ms. Johnsson's say-so.  I needed

6    some proof so I could present it to you.  Because he

7    tells me that what is there (A) doesn't have the value

8    she ascribes to it, and (B), more importantly, is part

9    of the marital property, the furniture she left behind

10   when she moved out and what she took.

11        THE COURT:  Let's refocus though on the property

12   that's in her possession at the apartment.

13        MS. STEEGE:  And why we went and got an

14   appraiser.  She kept repeating, This is so valuable.

15          So I said, Okay, if that is so valuable and

16   we have all of this valuable stuff, perhaps I should

17   look at what is in your home so we can get a gauge of

18   the sense of what we're talking about.  Because I fear,

19   like in so many instances where she's told me there's

20   great value in things, we spent a lot of time trying to

21   track that down and it doesn't pan out.  I thought this

22   might be an easy way to figure out if it's worth trying

23   to push some further discovery against Mr. Rittmanic.

24   And so we got an appraiser, unrelated to me.  I never

25   knew him.  He was somebody that we were able to locate

1    that was willing and worked in that area to go look at

2    it, and he seemed to have the credentials to go give us

3    an idea.

4            We spent quite some time getting her

5    permission to allow us to go in there.  We never were

6    able to get that, so we asked your Honor.  Your Honor

7    entered an order.  It was not to sell the property, it

8    was only to allow that inspection to occur.

9            And he went through.  And as I indicated the

10   last time, she is picking pieces out of and kind of

11   twisting in her argument here, he came back and looked

12   at the things.  And whatever she thinks of the value,

13   he came back and told me perhaps 10- to $14,000 worth

14   of value.  And as I told her at the time when we had

15   the appraiser, and as I told the Court, you know, a

16   year or so later at the hearing last April, after we

17   would pay his commission, the cost of advertising, the

18   cost of moving into a place where it could be sold, her

19   wild card exemption -- because at that point, that is

20   what her exemption was on and what I understood it to

21   be on -- and the cost of what might occur in court

22   getting to that point, it didn't seem to me like I

23   would realize anything other than the cost of the sale

24   and paying her $4,000.  I told her that.  And so I let

25   things sit as they had sat from the day of the case.

1    She claimed it as exempt, I didn't object to it.  She's

2    got possession of the property.

3              Now we have here a circumstance where she

4    comes in and she says I want the rent where I live

5    paid, and she casts this as a motion to store the

6    property and claims -- I guess based on that

7    conversation last month -- that somehow I should

8    abandon the property, and because I haven't done that,

9    that how it gives her a right to rent.

10             And I don't think there is any Code basis

11   for that.  I don't think that is a fair conclusion to

12   be drawn from what's occurred here, much of which has

13   happened before your Honor as a matter of public

14   record, these motions and things that occurred, and we

15   would just request that the motion be denied.

16        THE COURT:  Well, Ms. Steege, you can understand

17   though why a layperson, Ms. Johnsson in specific, would

18   be confused as to the status of the property that's in

19   her possession.  Is it -- is the trustee or the estate

20   still claiming an interest in that property or not?

21        MS. STEEGE:  No, we're not, your Honor.  And we

22   told her that.  And I know it does not seem like it

23   from the tenor of her comments directed toward us, and

24   I tried not to address the comments that she makes

25   about us that are, you know, frankly, nobody wants to

1    have said about them in public pleadings and on the

2    record.  We have tried.  Mr. Raiford has tried,

3    Mr. Kelly has tried.  I have tried.  She calls me the

4    absentee trustee, but I have had any number of

5    conversations with her, and we tried to explain things

6    to her.  Unfortunately, she doesn't accept our

7    explanations, but, you know, we've tried as we can to

8    explain things to her.

9              After the appraiser went through, it was

10   made very clear to her we were not going to sell the

11   property.  We didn't file any motions to do so.  We

12   told her we weren't going to do so.  I explained our

13   rationale.

14             I mean, I --

15        MS. JOHNSSON:  Your Honor --

16        MS. STEEGE:  Without being pejorative, I really

17   do think that what has unfortunately happened here is

18   Ms. Johnsson wants money for her rent, and this is the

19   vehicle that she has chosen to get there.

20        THE COURT:  Let me ask it a different way,

21   Ms. Steege.  Is Ms. Johnsson free at this point to sell

22   that property and take the funds that she receives from

23   the sale of that property to pay her rent?

24        MS. STEEGE:  Yes, your Honor.  In the same way

25   that with the car, if you will recall in her motion --

1   without rehashing things, that car -- apparently, there

2   was some problem with the car and she got an insurance

3   check for more than the exemption amount.  She took

4   that check without talking to me.  I mean, she

5   understood enough with regard to the car that because

6   she had claimed it as exempt, I hadn't objected to it,

7   she got an insurance check for the vehicle.  She didn't

8   come and report the amount over $2,400.  So, yes, she

9   is free to do that.  I do think she understands more

10  than might be portrayed here.

11       THE COURT:  Well, to be fair to Ms. Johnsson,

12  some of the confusion with respect to this may have

13  arisen when Mr. Raiford and I were having a discussion

14  with respect to the wild card exemption in court

15  because it was raised at that time by Mr. Raiford that

16  Ms. Johnsson remained in possession of personal

17  property -- sorry, estate property, and that it was,

18  therefore, disingenuous to give her money when she

19  actually had assets.  And we had a discussion, and

20  maybe I misinterpreted what was going on, but certainly

21  my side of the discussion would have given Ms. Johnsson

22  reason to believe that she was in possession of estate

23  property.

24       MS. STEEGE:  All we were trying to address there,

25  your Honor, was that we believed she had already

1    received the $4,000, not that we were going to go take

2    that property away from her and also deny her exemption

3    in it.

4        MS. JOHNSSON:  Your Honor, she is double counting

5    the $4,000.

6            And, first of all, I want to object.  I

7    never received an insurance check.  And now the trustee

8    is on record saying that I received an insurance check

9    and that I didn't turn over the proceeds to her.

10   Again, if she actually read the pleadings that I put in

11   front of this Court on the car, what happened was the

12   car started on fire on my way home from court.  I drove

13   it while it was on fire to the mechanic.  The mechanic

14   said to me, The best thing you can do is sell this car

15   right away.  So I drove it to the CarMax.  But I waited

16   until the fire had died out, and then I drove to the

17   CarMax.  And I said to the CarMax people, What will you

18   pay for this?  And they said, $4,000.  And since I

19   didn't want the car to start on fire again, I took the

20   check for the $4,000.

21           I then informed Ms. Steege in e-mail that I

22   had sold the car for $4,000.  I also had in my

23   exemption that I wanted $4,400 for the car, and that

24   actually $400 is what I wanted to then move over to a

25   different wild card exemption.

 1          THE COURT:  And I understand that.

 2          MS. JOHNSSON:  Now Ms. Steege would also have you

 3     believe that I listed that $4,000 against personal

 4     property.  I am looking at my Schedule C.  I did not

 5     list ever $4,000 against that personal property.  In

 6     fact, if I had, then my wild card motion wouldn't have

 7     been denied by you because I would had the money in the

 8     right bucket, where I don't have the money in the right

 9     bucket.  But I have the tools of trade exemption there

10     for $1,500.  And what we were going after that was,

11     indeed, tools of the trade items that had been sold to

12     Mr. Rittmanic by Ms. Steege.  So that is for the

13     printers and all of that that are in his office that

14     she sold to him.

15               We can go to the artwork about Mr. Rittmanic

16     that she keeps saying --

17          THE COURT:  No, we can't.

18          MS. JOHNSSON:  I'm not allowed to respond?

19          THE COURT:  No, Ms. Johnsson, what you're doing

20     is rehashing the facts that I am already accepting,

21     that you are in possession of artwork, that you are in

22     possession of this.  I'm trying to resolve what it is

23     you've asked for.

24          MS. JOHNSSON:  But I'm first trying to clear up

25     where she's lied about me again.  Because this is the

1    court's record, and she is an officer of the court.

2    And I have no other means other than to stand in front

3    of you and say this is where she is lying yet again,

4    all right.

5              So with respect to Mr. Rittmanic and the

6    artwork there, I would love -- I have already given her

7    a full inventory of everything that's listed there and,

8    again, all of the invoices.  I have carried the

9    invoices to Ms. Steege's office and said -- with two

10   grocery bags full of receipts -- would you like to copy

11   these, and she sent me home.

12             She has never in writing -- and I always

13   make sure that she gives me something in writing, I

14   don't trust her word for anything -- she has never in

15   writing once told me about the appraisal.  I even

16   called Mr. Susanin and said, When are you going to

17   auction it off?

18       THE COURT:  Ms. Johnsson, I'm stopping you now.

19   Ms. Johnsson, you have to stay focused.  All right?

20   You have --

21       MS. JOHNSSON:  I am just responding to what she

22   just said.

23       THE COURT:  Ms. Johnsson, you have a world view

24   where you believe that every little thing you hear you

25   must somehow correct if you think that it is incorrect.

1    That's not the way these matters work.

2        MS. JOHNSSON:  So people are just allowed to lie,

3    and you don't --

4        THE COURT:  In the same way that I have accepted

5    a number of things that you've said, Ms. Johnsson,

6    without questioning the veracity of what you said, I've

7    allowed you to make those statements because they are

8    not evidentiary in nature.  We've had this discussion

9    repeatedly.

10           What we are trying to do is get to what it

11   is you are seeking here and see if there is a

12   cognizable claim.  And I'm frankly -- and I think there

13   isn't a party in this court, other than perhaps you --

14   going out of my way to try to hear and see if there is

15   some kind of a claim here.  Most of my colleagues would

16   have dismissed this motion immediately.  I'm trying to

17   see if there is something here.

18           So stick with what it is you are trying to

19   do and why you are entitled to it.

20       MS. JOHNSSON:  Okay.

21       THE COURT:  So what you heard from Ms. Steege in

22   response to your presentation was she does not believe

23   that you're entitled to what you're seeking because

24   number one -- and I'm paraphrasing, obviously, this is

25   what I heard -- number one, this is your residence and

1    this is the rent you would have been paying to live

2    there anyway; and number two, you're not preserving

3    estate property because the property that's in your

4    possession is yours, not the estate's.  That's what I

5    have heard.  And it seems to me that those are both

6    fairly convincing arguments.  So that's what I want to

7    hear you respond to.

8        MS. JOHNSSON:  Okay.  So, again, the trustee is

9    still -- you point blank asked her, and now she's

10   saying that she told me that those assets were mine,

11   but she's never told me that those assets were mine.

12   And she kind of inferred the last time she was in court

13   here that those assets might be mine, and then you

14   asked her to file a trustee status report, and she did,

15   and she made it clear in there that she is not

16   intending to sell the assets, but she did not say that

17   I could sell the assets.  She just said she's not

18   intending to.  And she said that she thinks that there

19   would be a valuation fight, which indeed there would be

20   a valuation fight if I am given the opportunity to do

21   that.

22        She stated that it is her perspective that

23   there is not any -- no legally -- basically I am

24   paraphrasing for her now.  She doesn't think that there

25   is a precedent to do this.  And I believe again,

1    according to 11 U.S.C. 105(a), which gives this Court

2    sua sponte any ability to do whatever they would like

3    to do in order to make sure that justice has been met,

4    that, indeed, whether she likes the storage facility or

5    not --

6              It is true that the property is a block from

7    the lake.  It is the smallest rental I could find in

8    Winnetka.  And I need to live in Winnetka because

9    that's where my daughter lives.  And I was told by my

10   divorce court that did I not have a two-bedroom house,

11   I could not have my daughter have overnights with me.

12   So, yes, that's how I chose that location.  I chose the

13   cheapest rental property I could find in Winnetka that

14   had two bedrooms, and it does happen to be a block away

15   from the lake, which is very nice.

16             However, as I have repeatedly said, I cannot

17   pay for the storage of these items.  I cannot move

18   these items, and this is indeed where they are housed.

19   The trustee makes those decisions, not me.  And the

20   trustee did not choose to store them in some storage

21   facility, which the trustee could do, move them there,

22   move them to an auction house, do anything with it.

23   The trustee has not decided.  So if the trustee does

24   not choose to act, then the trustee has incurred a

25   responsibility of the estate.

1           And these are funds of administration.

2    Whether she likes the way it's been administrated or

3    not does not change, but that's exactly how it has been

4    administrated.  And if she doesn't like me hanging the

5    artwork on the wall and would like the artwork to be

6    put somewhere else, she has the ability to do that.  I

7    do not.  If I take the artwork off the wall and stick

8    it somewhere else, it's more likely to get damaged than

9    hanging on the wall.

10          If she would like the rugs to be somewhere

11   else, she has the right to do that, but she chooses not

12   to.  I have no other way to do it other than to store

13   them in the house.  I don't even have a basement.  All

14   I have is two floors.  The first floor is one great

15   room, and the second floor has two bedrooms and a

16   kitchen and a little office nook.  Everything in there

17   is crammed to the corners.  I can't store it anywhere

18   else.  I can't afford to move it somewhere else, nor

19   has the trustee ever asked me to do that.  The trustee

20   has just repeatedly said I have to store it because the

21   trustee has not decided to do anything with it.

22          The fact of the matter is that these rents

23   have been incurred.  I have told the Court that I am

24   not paying these rents.  The trustee at that point in

25   time could have said, Oh, my goodness, we know that

1    those assets are there; we know rent is not being paid;

2    we know that the landlord would most likely have a

3    right to attach to this property; we had better move

4    the property.  The trustee did none of that.

5         THE COURT:  All right.  I've heard enough along

6    that line, Ms. Johnsson, because again we're just

7    rehashing things.

8              I'm about to do something very unfair, and

9    that is I want to look at the U.S. trustee who is

10   sitting down and say, U.S. Trustee, are you aware of

11   any instances where a debtor has been successful in

12   seeking to have -- in a Chapter 7 case have the estate

13   pay costs of preserving, I suppose, what might be

14   estate assets?

15        MS. GLEASON:  No.

16        THE COURT:  And that's where the problem is.  The

17   trustee said "no" just to be clear.  It was not very

18   audible.

19             So here's what I'm hearing, and I just want

20   to make sure that Ms. Johnsson understands this.  As,

21   again, I paraphrase what Ms. Steege said in response to

22   what -- your argument, Ms. Johnsson, and I know that I

23   didn't fully capture everything she said, but I

24   paraphrased it to say that there were two essential

25   objections to what you're doing.  Number one is these

1    are costs that you would incur anyway.  And, frankly,

2    you've talked yourself out of any relief by your

3    statements that you have made.  You have made it very

4    clear that you would rent this apartment and that you

5    would pay for a two-bedroom apartment irrespective of

6    whether you were storing estate property.  You said

7    that very clearly with respect to the child custody

8    issue.

9         MS. JOHNSSON:  I will or I would be out on the

10   street.

11        THE COURT:  And so, Ms. Johnsson, the fact is

12   that you have failed to establish that you were

13   incurring some additional cost beyond the cost that you

14   would already incur.

15             But to be clear with respect to a

16   clarification of your right to proceed against the

17   personal property, 105 does not give me carte blanche

18   to enter whatever order I wish, but it does seem to me

19   that this would be a type of instance where 105 could

20   allow me to enter some sort of an order that clarifies

21   the understanding the parties have already expressed on

22   the record, which simply is, Ms. Johnsson, that

23   property that's in your possession you are free to

24   dispose of.  If you wish to sell it and keep the

25   proceeds of it, you may do so.  If you wish to abandon

1    it, you may do so.  But what I'm hearing is the trustee

2    who is representing the bankruptcy estate is claiming

3    no interest in those personal property assets.  And I

4    am happy to enter an order, clarifying order, under

5    Section 105 that says that.  And perhaps through that

6    you will be able to generate the funds to pay your

7    rent.  But I cannot under the circumstances grant the

8    relief with respect to the trustee or the estate paying

9    your rent.  You simply have failed to establish the

10   grounds for that request.

11          So let the record reflect that what I am

12   going to do is grant in part and deny in part your

13   request with respect to the rent.  With respect to the

14   payment of the rent itself by the estate, that request

15   is denied.  With respect to the 105 relief that,

16   Ms. Johnsson, you are seeking under this, I will grant

17   that relief insofar as I will enter an order that

18   clarifies your rights as to the personal property, and

19   I think that will then conclude that motion and it will

20   conclude any amended motion that you filed, although I

21   have not seen that.  So that is the ruling with respect

22   to Ms. Johnsson's motion.

23          However, before I finish, I just want to

24   make sure, Ms. Johnsson, to the extent that there is

25   some sort of right that is governed by the automatic

1    stay, although I am having a hard time seeing that the

2    automatic stay might prevent your landlord from seeking

3    to evict you under these circumstances, you may have

4    protections in that regard.  So you -- again, I suggest

5    that you seek counsel with respect to that.  I don't

6    enter orders imposing what is already stayed.  The stay

7    defines the limitations of this Court stopping other

8    parties' actions.  And so you may have a right there,

9    you may not.  But you want to investigate that yourself

10   as you deal with your landlord.  And that's the last of

11   the legal advice you will get from me in that regard.

12            Okay.  Now moving on, what we have is the --

13        MS. JOHNSSON:  Can I just ask, am I clear to sell

14   those assets?  Like I can sell them today?

15        THE COURT:  You can sell them today,

16   Ms. Johnsson.

17        MS. JOHNSSON:  And I can keep all of that money

18   and I can pay my landlord with it and I could do

19   whatever else I want with it?

20        THE COURT:  Absolutely.  And I am more than happy

21   to enter an order today that says exactly that.

22        MS. JOHNSSON:  Thank you.

23        THE COURT:  All right.  Okay, we're now, I think,

24   following in order, up to the adversary proceeding, the

25   727 adversary proceeding status and Ms. Johnsson's

 1      motion to strike the complaint.

 2             And this is no less difficult than the other

 3      issues that we've been facing today, but I will tell

 4      you this:  Ms. Johnsson, I've read your motion to

 5      strike, and it's my understanding that you have already

 6      answered the complaint, so this is not -- at first

 7      glance, I thought that this was simply an ill-timed

 8      request to dismiss the complaint under the rules, but

 9      what you are really seeking here, even though you cite

10      I think Rule 26, is you're seeking Rule 37 type of

11      relief because of an arguable Rule 26 violation.

12             And, again, this is my -- this is the Court

13      acting in its role with a pro se litigant to attempt to

14      try to find some cognizable claim here.  There is no

15      cognizable claim under Rule 26 in and of itself.  I

16      looked at Rule 37 and I've looked at the alleged

17      problems with discovery that you have said, and I'm not

18      seeing grounds to grant the relief that you're

19      requesting.  You have a laundry list of things that you

20      think are wrong with the discovery, but they in my mind

21      fall within almost two categories, and that is this:

22      That you're not understanding much of what has been

23      disclosed to you, that it is too voluminous or you're

24      having a hard time making it connect.  That's --

25      unfortunately, that is again your role representing

1    yourself, it is your job to address that.

2            The second essential aspect is you seem to

3    think that the trustee needs to quantify some sort of

4    damages here.  To the extent that damages need to be

5    quantified, that is a triable issue for the Court, and

6    it's not something that a party can be forced to

7    calculate by way of discovery.

8            The elements that underlie that issue, of

9    course, have to be given, and from what I have seen,

10   Ms. Steege has disclosed everything in that regard that

11   is relevant.  I can't prove a negative.  If there is

12   something out there to further disclose, then perhaps

13   so.

14           There is a number of -- those are the two

15   major things.  There is a number of statements and

16   perhaps requests that you make in your motion,

17   Ms. Johnsson, that seem to be that you're trying to

18   find out how the trustee came to the trustee's belief

19   or understanding of why certain violations that she

20   allege occurred.  In other words, it seems to me you're

21   looking for her source of information.  You --

22     MS. JOHNSSON:  The trustee has accused me of

23   fraud, and I am supposed to be able to defend against a

24   fraud.  However, the trustee refuses to define the

25   fraud.  One of the first things that is required to

1   define fraud is to specify what the intent is.  She

2   says I didn't disclose assets.  As we know, I have

3   disclosed these assets and provided the schedules where

4   I disclosed them and have been disclosing them since

5   September of 2011.

6        THE COURT:  Ms. Johnsson, second warning on

7   interrupting me.  Third warning you will be escorted

8   out.  I am going to finish what I was saying before you

9   so rudely interrupted me.

10        All right.  Now, there are a number of

11  things that you seem to be doing that seems to me

12  you're trying to find out how she heard of something or

13  how she came to believe or know a certain fact.  To the

14  extent that is salient to the factual determination

15  under 727, which is what I was going to say, it will be

16  a matter that she will have to prove.  She will have to

17  put her facts before us as the plaintiff in this case.

18  And if she fails to do so, then she will not succeed in

19  her 727 action.

20        But you, Ms. Johnsson, have to focus on the

21  complaint.  As I can see right now, as I read your

22  motion to strike, you're all over the place.  You're

23  seeking to essentially litigate this case as a whole,

24  what you believe to be a grave injustice, and you want

25  to have everything that went on in this case brought

1  into this particular issue.  Whereas, what Ms. Steege,

2  as the trustee, has done here is she has identified

3  very specifically what aspects of 727 she believes you

4  violated, and she has identified very specifically what

5  facts she believes give rise to that violation.

6         It is only that allegation that is before

7  the Court.  Should the trustee believe that some

8  additional aspects support her claim, she has failed to

9  plead those.  Stick with what she's pled.  That's your

10 job.  Your job is to defend what has been pled.

11 Nothing more.  And that's why this is a very narrow

12 issue.  It's much more narrow than you believe.

13        This is a very simple and a very targeted

14 complaint.  It is very clear what the trustee has

15 alleged here.  Your job is to respond to what she has

16 pled, nothing more.

17        So, again, I've taken a look at this, and I

18 can't see a cognizable claim under Rule 37 or

19 otherwise.  And I also can't see why discovery should

20 be dragged on in this particular matter.  The issues in

21 this complaint are very, very simple.  All right?  It

22 should not take you long, Ms. Johnsson, to either

23 refute or accept what the trustee has pled here.

24        That's what the purpose of discovery is.

25 Not to go on a fishing expedition, not to allow you to

1    grind an axe against the way this case has been

2    conducted.  This is a very specific, compartmentalized

3    action, and you need to act within that.

4         MS. JOHNSSON:  Your Honor, I am responding to the

5    fact that the trustee has accused me of fraud.

6         THE COURT:  Indeed.

7         MS. JOHNSSON:  Right.  And that the trustee is

8    not even seeking to recover the assets that she is

9    accusing me of being fraudulent about.  She's only

10   seeking a retaliatory motion to discharge my -- or to

11   revoke my discharge.

12        THE COURT:  Ms. Johnsson, I'm going to read from

13   the complaint to you with respect to the allegation of

14   fraud.  727(b)(1):  The Court shall revoke a discharge

15   granted under subsection (a) of this section if such

16   discharge was obtained through fraud of the debtor.

17             All right.  Now, next paragraph:  The debtor

18   obtained her discharge by fraud by falsely testifying

19   in her schedules to her bankruptcy petition and her

20   Section 341 Meeting that she held no interest in real

21   property besides Winnetka property and the Wisconsin

22   property, thereby failing to disclose the Richmond

23   property.

24             That's all she has alleged.  That's it.

25        MS. JOHNSSON:  If she believed that the Richmond

1   property was bankruptcy estate property, why isn't she

2   trying to take the Richmond property?  Why isn't she

3   trying to pursue an interest in it?

4        THE COURT:  Ms. Johnsson, your job is not to

5   question the motivations of the trustee but to respond

6   to the complaint.  Is what the trustee pleads here true

7   or not?  Did you fail to disclose in your bankruptcy

8   petition and schedules and at your 341 Meeting your

9   ownership in the Richmond property, yes or no?  I am

10  not asking you to answer that.  Do not answer it on the

11  record because you've done that a couple of times where

12  you've said things on the record that I've told you not

13  to.

14             I just want you to understand what your job

15  is here and what this complaint is.  If you can provide

16  me facts that will lead me to believe that this cause

17  of action, Count I of the complaint, on this sole

18  fact -- this is the only fact that the trustee

19  raises -- if you can provide me facts that say this is

20  not a cognizable claim, you will win.  But that is it.

21  Do you understand?

22       MS. JOHNSSON:  I do understand what you're

23  saying, all right.  The issue in getting to completion

24  of discovery from my perspective is this: 1) For

25  instance, there is a transcript from the Creditors

1    Meeting.  And I specifically asked in my motion that I

2    be given the contact information so that I could find

3    out where I could get the tape recording or the

4    transcript because in that transcript Deb Ebner is

5    outlining to Ms. Steege and to Mr. Schreiber, who is

6    the attorney for Mr. Rittmanic, the frauds that were in

7    Mr. Rittmanic's business valuation and all of that.

8              And if you will notice at the end of the

9    transcript, which the trustee did attach to her

10   adversary complaint, that at the end of the transcript,

11   right where Ms. Ebner is saying, "and what about this

12   fraud," then the transcript says, "Bye-bye."  Now I

13   really have a hard time believing that Deb Ebner would

14   have accepted out of Mr. Schreiber "Bye-bye" as an

15   answer in respect to the frauds committed by

16   Mr. Rittmanic.  And, additionally, the trustee says

17   that she didn't know about these frauds when she was

18   doing the settlement agreement with him, but that

19   transcript shows that she did know about the frauds and

20   that we were discussing them from the very first

21   meeting on October 18th, 2011, the first time that we

22   could see Ms. Steege.  And so I would like a copy of

23   that transcript, and I would like the tape recording.

24        THE COURT:  You have a copy of the transcript.

25   You told me --

1          MS. JOHNSSON:  No.

2          THE COURT:  -- she attached it to her complaint,

3     and you're telling me what it contains, so obviously

4     you have a copy of the transcript.

5          MS. JOHNSSON:  I have a copy of the transcript

6     that does not appear to me to be a valid transcript.  I

7     do not think that the ending of that meeting compared

8     to my notes from that meeting, because I was there, and

9     compared to the unreasonable words that have been

10    placed there instead, that that is a true transcript.

11         THE COURT:  Then, Ms. Johnsson, that is your

12    responsibility.  It is not the trustee's responsibility

13    to go out and do your job for you.

14         MS. JOHNSSON:  The trustee --

15         THE COURT:  She has disclosed what she has.  If

16    you don't agree with it, if you don't believe it's

17    true, go get the opposite document, the underlying

18    audio recording, or get it from the source and compare

19    it.

20         MS. JOHNSSON:  She won't give me the document.

21         THE COURT:  It is not to come from the trustee.

22    It is for you --

23         MS. JOHNSSON:  She told me it's her tape

24    recording, and she won't give it to me.

25         THE COURT:  Ms. Steege.

1         MS. STEEGE:  Your Honor --

2         MS. JOHNSSON:  It wasn't the court reporter here.

3    It was somebody at her office who tape recorded it.

4    She won't give me the tape recording.  She won't give

5    me the transcript.  She won't tell me who to get the

6    transcript from.  And in writing she replied to me --

7         THE COURT:  Ms. Johnsson.

8         MS. JOHNSSON:  Yes.

9         THE COURT:  I was talking to Ms. Steege.

10        Ms. Steege, could you shed some light on

11   this, please?

12        MS. STEEGE:  Your Honor, the 341 meetings take

13   place on the eighth floor here.  We use recording

14   equipment provided by Ms. Gleason's office.  There are

15   digital tapes.  I obtained the tape.  There is no court

16   reporter.  We typed up what was on the tape.  She can

17   get a digital recording from Ms. Gleason.  She could --

18   I will make her a copy of the disk we got from the U.S.

19   Trustee's Office if she wants it.  We gave her --

20        MS. JOHNSSON:  I have twice asked for it.

21        THE COURT:  Ms. Johnsson --

22        MS. STEEGE:  No, she has not, your Honor.

23        THE COURT:  Ms. Johnsson, it doesn't matter

24   whether you asked for it.  It is your job to get it and

25   not Ms. Steege's.  You're asking Ms. Steege to do your

1    job for you.  You're representing yourself and,

2    therefore, you must act as the counsel in this matter.

3         MS. JOHNSSON:  I asked her to disclose to me

4    where I could go to get a copy of it.

5         THE COURT:  Ms. Johnsson, as I said at the

6    beginning of this case, it is not the job of the

7    parties to correct your ignorance.  You are

8    representing yourself.  If you don't know how to

9    operate within those confines, you -- you have the

10   problem of being a pro se litigant.  You have to go out

11   and investigate.

12        MS. JOHNSSON:  She provided a transcript.  I

13   asked her where she got it.

14        THE COURT:  You're asking your counter-party to

15   do your job for you.

16        MS. JOHNSSON:  She is supposed to be on my side.

17   She is supposed to be --

18        THE COURT:  No, Ms. Johnsson, in this matter she

19   is not.

20        MS. JOHNSSON:  Obviously.

21        THE COURT:  Obviously?  Ms. Johnsson, you clearly

22   don't understand what we're talking about, so let's

23   back up for a moment.

24             The trustee has commenced an adversary

25   proceeding against you.  She is the plaintiff, you are

1    the defendant.  Putting your sarcasm aside, that

2    obviously makes her the counterparty here, not your

3    representative.  And you need to understand that and

4    keep the snark at home.

5         MS. JOHNSSON:  She used as her exhibit the

6    transcript, and I just asked her how to get it.  I'm

7    sorry that I did not know to ask who was recording

8    things or even if there was a recording or how I could

9    get a copy of it.  Now I know.  This is the third time

10   Ms. Gleason has shown up here in this courtroom, and

11   now I understand it's Ms. Gleason that I should

12   contact.

13         I do not have any contact information for

14   Ms. Gleason, but I understand I'm a pro se debtor and

15   I'll have to find it somewhere, but I can't ask Ms.

16   Steege for it because she is adversarial to me.  I

17   understand.

18         THE COURT:  She is, in fact, your adversary in

19   this matter.  You --

20         MS. JOHNSSON:  Yes, she is.  She is.  I'm

21   agreeing.

22         THE COURT:  Keep the snark at home, Ms. Johnsson.

23         What you fail to understand in all of this,

24   even though the Court adopts a stern tone with you

25   because you don't seem to listen unless I do anything

1    other than that, is that I'm doing my best to do

2    justice here, even though you claim constantly that

3    you're getting no justice in this case.  I am doing my

4    best to see when you file something whether there is a

5    cognizable claim.  I'm doing my best to look through

6    your unfounded and inflammatory allegations and try to

7    find whether there is some relief that I can grant you.

8    I am now over an hour into a hearing with you which in

9    front of all of my other colleagues would never have

10   gone this far.

11           I have let you say your piece except when

12   you go off and start repeating the same things over and

13   over again.  I have tried to give you, to the extent

14   that I can as the judge in this matter, well-meaning

15   advice about how you can conduct yourself as a pro se

16   litigant.  You continue to ignore that.  You talk out

17   of turn, you're rude, you act as if you are entitled to

18   something that you are not.  You need to get over your

19   entitlement and you need to start acting like the

20   professional that you claim to be.  You're not an

21   attorney, but you are a professional, and you need to

22   start comporting yourself that way.  And this is not

23   the first time, Ms. Johnsson, I've said that exact same

24   thing to you.  Do you understand?

25           MS. JOHNSSON:  I do.

 1          THE COURT:  All right.

 2              Now, we're back on the motion with respect

 3     to striking the complaint.  The point behind all of

 4     this is I find no cognizable claim under Rule 37 or

 5     otherwise to strike the complaint based on the alleged

 6     discovery abuses contained in the motion.  The motion

 7     is denied.

 8              I also find that in light of the very

 9     specific and narrow aspects of this complaint, that

10     discovery should be concluded forthwith.  If it is not

11     concluded at this point, I need to set a deadline and

12     get it concluded.

13              And, Ms. Steege, I am going to ask you if

14     you can tell me what the status is of discovery in this

15     matter.

16          MS. STEEGE:  Yes, your Honor.  As we reported in

17     April, one of the things we want to do is to take Ms.

18     Johnsson's deposition.  We sent her a letter suggesting

19     over --

20          MR. RAIFORD:  Fourteen.  Fourteen different

21     dates.

22          MS. STEEGE:  -- fourteen different dates that we

23     would make ourselves available at her schedule.  She

24     indicated that she would respond to us by mail, but she

25     never did send us a response by mail as to what date

1    would be acceptable.  We contacted her again.  We told

2    her we would just select a date if she didn't give us a

3    date.  And, mind you, this is just correspondence since

4    we were last here.  There was correspondence predating

5    that where we were also seeking a date by agreement.

6    She never did get back to us.

7              We have served her with a deposition notice

8    for a deposition -- June 5th?

9         MR. RAIFORD:  5th, yes.

10        MS. STEEGE:  June 5th, and we expect that she

11   would show up.  When we sent her the notice, mindful of

12   what your Honor said, we said to her, if this really

13   doesn't work for you, we will change it provided you

14   give us a different date.

15             We have not heard from her, so we expect she

16   will be there on June 5th.

17        THE COURT:  At what time and what location?

18        MS. STEEGE:  It's at Jenner & Block, and it's set

19   at 9:30.

20        MR. RAIFORD:  9:30.

21        THE COURT:  9:30 A.M.

22        MS. STEEGE:  All right.  The other thing that we

23   have done because the other count of the complaint

24   which deals with the inheritance she did not turn over,

25   we had asked her in our document request for documents

1    showing where she spent the money.  What she provided

2    us did not include that information.  We asked her

3    repeatedly could you give us the canceled checks of how

4    you spent the money, because we know she spent it

5    because she sent me a letter indicating that, you know,

6    she didn't have the money anymore, so we assume that

7    she spent it.  We asked for that.  I think I know what

8    bank the money went into, so because we couldn't get

9    anywhere with her, rather than do a motion to compel,

10   we served a subpoena on the bank for the bank

11   statements and the checks to the bank where we think

12   the money was, BMO Harris.

13          She also -- she did turn over a small part

14   of the inheritance at one point when we were

15   continually trying to get her to just turn it over, and

16   that was drawn on a certified check from MB Financial,

17   so we also subpoenaed MB Financial to obtain those

18   documents.

19          We've asked for the attorney who handled the

20   closing of the home to give us the closing documents.

21   We've subpoenaed him.  And the attorney who set up the

22   trust at the Richmond property in her name, we've asked

23   for his documents.

24          All of the subpoenas are returnable in the

25   next two weeks.  We're done at that point.

1          MS. JOHNSSON:  Your Honor, I have not received

2     any copies of these subpoenas.  This is the first

3     notice that I am getting that there even are subpoenas

4     out there.  I already did provide them with bank

5     statements, so I'm sure that they know what banks

6     because I gave them the bank statements from the

7     account.  I opened an account to put the money into.  I

8     gave them the bank statements, and I actually closed

9     the account when they asked for the money and gave them

10    all the proceeds except for a small amount that had

11    been spent on legal fees.  I've already admitted that

12    in court several times.  I've already put that in

13    documents.  I've put it in my response.  I put it in my

14    motions to compel.  Everything.

15          So I agree, one, that I hear you clearly

16    that discovery needs to move forward.  I guess that the

17    trustee is by default saying that she's done with

18    written discovery on me and now she's just subpoenaing

19    banks.  But, again, they have not even provided me with

20    copies of the subpoenas whereby I at least have a right

21    to have a motion to quash if I wanted to do that.  But

22    by that time -- by the time that I actually get them,

23    they'll probably already have the stuff from the banks.

24    I have nothing that I was hiding one way or the other

25    anyways, and I already provided them with the bank

1     statements.

2             I have not responded to any of their

3     requests because my understanding from the last court

4     appearance was that we were waiting to hear my motion

5     to strike.  And so I am waiting to hear the motion to

6     strike, which we just heard today.

7             There is a lot of discovery that still needs

8     to be done from a written discovery standpoint.

9     Basically what has happened with my brother's house is

10    that I tried to buy it for him, we put the title in his

11    name.  My ex-husband coerced him and a number of people

12    to sign, and I think that my ex-husband went and

13    actually filed a lien against the house for a trust

14    that doesn't exist and the trust has my name on it.

15    That's what the title of the property is.  So the

16    trustee's point on this is that, Oh, it's my property.

17            Well, I've never known it to be my property.

18    I've never considered it to be my property.  However, I

19    did disclose it on statements of something that I

20    wasn't including.  I said this property exists, my

21    brother did -- does own it.  I did pay for it

22    originally, and that was in 2002, and I gave her a

23    mortgage that had been signed and then canceled.

24            All of this was I was trying to give this to

25    my brother back in 2002.  I don't know at this point in

1    time does my -- because my brother and my mother lived

2    in that house, then they sold that house, they gave me

3    the proceeds from the sale of their house, and then

4    they moved into the house that I bought for them.  So I

5    don't know at this point in time did my brother and

6    mother own the house and then when my mother died, then

7    that gets split into three with the siblings and then a

8    piece of that is owned by the bankruptcy estate, or if

9    I own a hundred percent of the house, or --

10         THE COURT:  Get back to the point.  What is it

11    that you still need to do?

12         MS. JOHNSSON:  So there are -- from what I

13    provided in discovery, there are three different

14    lawyers that my husband might have had touch this.  All

15    of them have their names on certain documents, but none

16    of the documents are holding together.  Those lawyers

17    all want to be paid to come and testify and to do

18    anything.  There is an accountant that was involved.

19    That accountant also wants to be paid to testify.

20    Those to me are the people, the experts who touched

21    this, that can decide whether it belongs in bankruptcy

22    court or not.  My brother would like to decide whether

23    it belongs in bankruptcy court or not.

24         We have continued to say we would like an

25    honest trustee to sit down with us and resolve this;

1    but the title is unclear and the ownership is unclear,

2    and because it's unclear, I have always disclosed the

3    property but not listed it in my assets.  I do not

4    believe I own that house.  I do believe my brother owns

5    that house.

6              If you go to the real estate title on it, it

7    says that the title is owned by a non-existent trust,

8    and that trust name is Margaret Ann Johnsson Trust or

9    Margaret A. Johnsson Trust.  There is no such trust.

10             Again, these lawyers exist, and one of the

11   lawyers, who is a lawyer for the Much Shelist law firm

12   -- and Michael Shelist, of Much Shelist law firm, is a

13   partner in Forte CEO, my husband's business, and it was

14   a lawyer working in his law firm that did file this

15   lien paperwork, but they never filed the trust

16   paperwork.

17             I provided to the trustee a letter -- a

18   handwritten letter by my brother that says that he

19   thinks that Mr. Rittmanic is trying to defraud him of

20   the property.

21        THE COURT:  Ms. Johnsson, you tell an interesting

22   narrative, but you get off point.

23        MS. JOHNSSON:  So my point is this:  That I need

24   funds to be able to bring these experts to the table,

25   whether -- and the trustee should want these experts to

1    come to the table because they're the only people who

2    can resolve what it is that happened and who owns this

3    property.

4          THE COURT:  No.  No, Ms. Johnsson.  I can resolve

5    that.  You don't get to have people come in and testify

6    as to legal conclusions.

7          MS. JOHNSSON:  No, it's just to what documents.

8    I don't know if there are documents that I don't have.

9          THE COURT:  Then you ask for the documents.  You

10   make discovery requests on these parties.

11         MS. JOHNSSON:  Okay.

12         THE COURT:  All right.  You subpoena the parties.

13         MS. JOHNSSON:  I don't even know how to do a

14   subpoena.

15         THE COURT:  You are representing yourself,

16   Ms. Johnsson.

17         MS. JOHNSSON:  Again, I think that these are

18   things that the trustee would want to know.  I would

19   assume that the reason the trustee is interested in my

20   brother's house is because the trustee thinks that the

21   bankruptcy estate has a claim to that.

22              I would like to be able to resolve that.  I

23   have no money to do any of this.  I don't have the

24   money to file a subpoena.  I don't have money to make a

25   photocopy.

1          So I would like to see justice.  I would

2     like to see this get resolved.  My brother would like

3     to see it get resolved.  We would like to work with an

4     honest trustee to do that.

5          THE COURT:  I'm going to warn you again,

6     Ms. Johnsson.  You say it again.  You're implying that

7     Ms. Steege is dishonest.  I've told you before, leave

8     that kind of invective out of here.  Act professionally

9     or face the consequences.

10         MS. JOHNSSON:  Okay.

11         So, again, I would like to serve discovery

12    on these people.  I would like to have time to have the

13    written deadline for discovery extended because that

14    discovery deadline did expire between our last court

15    date and this court date.  And if you will recall the

16    last court date, I said that that was going to expire,

17    but, you know, nothing happened.  And I have done

18    nothing waiting for my motion to be heard, which it was

19    just heard today.  And then I don't believe that oral

20    discovery should happen until written discovery can be

21    done because I wouldn't say anything different than

22    I've already said over and over again, that I don't

23    know anything more than what I've already disclosed to

24    the trustee.  So we can have an oral deposition where

25    I'll say I don't know, I don't know, I don't know, but

1    I don't want to have my oral deposition of Jenner &

2    Block and all the Steege people there -- you know,

3    there's nine people I guess that have been involved

4    from Jenner & Block in billing on this case, and I

5    don't know which of those have information related to

6    my brother or not.  And they said that Mr. Rittmanic is

7    the one who accused me of fraud in this situation, so I

8    would like to see something from him that accuses me of

9    fraud.  But all of this, I guess, is all

10   attorney/client privilege, and I'm trying to find out

11   when these various people were indeed attorney/client

12   privileged people and when they were not, but now that

13   motion has also been denied.  So I really don't know

14   how to proceed in this matter.

15       THE COURT:  All right.  So, Ms.  Steege, I am

16   going to ask you again on the deadlines that have been

17   imposed by the Court with respect to discovery, is

18   Ms. Johnsson correct, first of all, that the written

19   discovery deadline has passed?

20       MR. RAIFORD:  Yes, she is.

21       THE COURT:  Okay.  But the oral discovery

22   deadline has not?

23       MR. RAIFORD:  That's right.  I think that expires

24   in July.

25       THE COURT:  All right.  Here's what I'm going to

1    do under the circumstances, is I'm going to open up,

2    against my better judgment, a very limited window for

3    additional written discovery for Ms. Johnsson to pursue

4    if she so desires.

5              Ms. Johnsson, it is your obligation to do

6    what is necessary to prosecute your case.  It's not

7    Ms. Steege's obligation to do your case for you.  She

8    is your opponent in this adversary.  She's the

9    plaintiff, you are the defendant.  You need to act

10   accordingly.

11             The -- we're here on May 20th.  I'm opening

12   an additional 30 days for written discovery.  That will

13   take us through -- give me a moment -- June 19th would

14   be the close of written discovery.

15             I am going to ask if Jenner & Block can pick

16   a date after June 19th -- right now, if possible -- for

17   the deposition of Ms. Johnsson.

18        MS. JOHNSSON:  And at the same time, I would like

19   the deposition of all nine Jenner & Block people.  I

20   don't think I should have to reschedule that.  So

21   whatever day, let's just have it be a Jenner & Block

22   day.  They can -- you know, they can do their oral

23   discovery on me, and then I will do my oral discovery

24   on all nine of the people who have been involved in my

25   case.

1    MS. STEEGE:  Your Honor, you don't get to depose

2    the other side's counsel except in extraordinary

3    circumstances.  There is substantial case law to that

4    effect.

5        MS. JOHNSSON:  It's not been proven that they

6    were counsel.

7        THE COURT:  Ms. Johnsson -- all right, I was

8    doing you a favor by asking Ms. Steege to respond.  Of

9    course, you interrupted her.

10            There is no deposition of the attorneys

11   unless I find that there is some extraordinary

12   circumstance in which the attorney becomes essentially

13   part of the facts of the matter.  Here that's not the

14   case.  The attorneys are the agents for the trustee.

15       MS. JOHNSSON:  So do I get to depose anybody on

16   their side?  Just Steege?  Anybody?  Nobody?

17       THE COURT:  If you wish to take Ms. Steege's

18   deposition, I'm going to allow her to respond to that

19   request, but you certainly -- I don't see any grounds

20   for you to depose her counsel.

21       MS. JOHNSSON:  All right.

22       THE COURT:  I mean parties generally do get an

23   opportunity to examine each other in advance of a

24   trial.

25       MS. JOHNSSON:  It's not proven that they were her

1    counsel.

2         THE COURT:  Ms. Johnsson, of course they're her

3    counsel, and you know that, and you have said it

4    repeatedly.

5         MS. JOHNSSON:  I don't think that they had your

6    authorization to be her counsel.

7         THE COURT:  You adopt positions that are

8    convenient to you at the time.

9         MS. STEEGE:  Your Honor, we could do it on

10   June 23rd, at 9:30, if that would work for

11   Ms. Johnsson.

12        THE COURT:  Ms. Johnsson, June 23rd, at 9:30.

13        MS. JOHNSSON:  And am I also deposing Ms. Steege

14   at the same time?

15        THE COURT:  It sounds as if you are, but what we

16   would do is it would not be simultaneous.  It would be

17   perhaps the morning with you, Ms. Johnsson being the

18   deponent, and Ms. Steege in the afternoon as being the

19   deponent.

20             I can't see any other way to do it,

21   Ms. Steege.

22        MS. STEEGE:  Right.  We obviously can't do it at

23   the same time.

24        THE COURT:  Oh, no, I understand, but she's

25   saying the same day essentially.

1          MS. STEEGE:  That's fine, your Honor.

2          THE COURT:  All right.

3          MS. JOHNSSON:  So we have mine at 9:30, and we

4     have Ms. Steege's at what time?

5          MS. STEEGE:  Well, maybe when we finish her

6     deposition, your Honor?

7          THE COURT:  Right, I would say you finish, take a

8     break for lunch, and then you start again.  This is the

9     way this happens when there is counsel involved.  They

10    don't set --

11         MS. JOHNSSON:  Well, I will have a court reporter

12    there.

13         THE COURT:  There will be a court reporter there.

14         MS. JOHNSSON:  No, I will have somebody I am

15    paying to be there.

16         THE COURT:  If you wish to have a second court

17    reporter, they will make --

18         MS. JOHNSSON:  So I need to have a time to have

19    them show up.

20         THE COURT:  If you want your court reporter to be

21    there from 9:30 on, all right, if you don't trust

22    Ms. Steege's court reporter, then your court reporter

23    should be there the entire day.

24         MS. JOHNSSON:  I'm only going to be able to pay

25    for an hour, and then I'll just pay for Ms. Steege's

1    time.

2        THE COURT:  That's entirely your prerogative.

3        MS. STEEGE:  Your Honor, why don't we just say

4    1:00 o'clock?

5        THE COURT:  All right.  Let's say 1:00 o'clock.

6        MS. JOHNSSON:  Thank you.

7        THE COURT:  All right.  So with that in mind, at

8    some point during the many, many, many, many things

9    that have been said today that don't relate to the

10   matters before the Court, it was stated that the next

11   time the parties were coming back was in late July.  I

12   have no record of that.

13       MR. RAIFORD:  Yeah, I'm not -- that could be

14   true.  I'm not aware of that.

15       MS. JOHNSSON:  I thought you said 7/27.  Oh, that

16   was an order 727, ruling something, not a date.  I'm

17   sorry.

18       THE COURT:  That is the statute under which the

19   complaint has been lodged.

20           All right.  So we get past the 23rd.  Is

21   that -- June 23rd is the date that you were talking

22   about for depositions?

23       MR. RAIFORD:  Yes.

24       THE COURT:  I would like the parties to come in

25   for status after that point.

1          MS. JOHNSSON:  Can we have a status after the

2     written discovery?  Because if written discovery has

3     not been complied with, then I would be asking for oral

4     depositions to be extended.

5          THE COURT:  There is no date between them,

6     Ms. Johnsson.  June the 19th is going to be the close

7     of written discovery.  June 23rd will be the deposition

8     of the parties, deposing one another.

9          MS. JOHNSSON:  So maybe we could move that back

10    to the 30th so that we have time for a status in

11    between so we can make sure that discovery was complied

12    with.

13         THE COURT:  The status hearing will then be

14    taking place on July 1st if that works for the parties.

15    I understand it's right before the holiday.

16         MS. STEEGE:  Mr. Raiford may be gone, your Honor,

17    but --

18         MS. JOHNSSON:  Then let's not do it because

19    Mr. Raiford has been here and Ms. Steege has not.

20         THE COURT:  Ms. Steege, if you're willing to go

21    forward on July 1st, at 10:30, that would be the next

22    status in the matter.

23         MS. STEEGE:  That's fine.

24         THE COURT:  All right.  Oral discovery at this

25    point closes when pursuant to the current orders of the

1    Court?

2         MS. JOHNSSON:  July 17th.

3         THE COURT:  All right.  So there is no reason to

4    alter that order.

5              All right.  So I will see you back here on

6    July 1st, at 10:30.

7              And the one thing I would suggest -- and I

8    imagine it's not going to be possible, but if the

9    parties want to discuss, given the pending appeal and

10   the pending complaint, if there is a settlement of this

11   that can make it go away, please do.  Talk to one

12   another.  If not, that's your prerogative.

13             All right, thank you.

14        MS. JOHNSSON:  Thank you, your Honor.

15

16                       (Which were all the proceedings had

17                        in the above-entitled cause, May

18                        20th, 2015.)

19

20

21        I, CAROL RABER, C.S.R., DO HEREBY CERTIFY
          THE FOREGOING IS A TRUE AND ACCURATE
22        TRANSCRIPT OF PROCEEDINGS HAD IN THE
          ABOVE-ENTITLED CAUSE.
23

24

25

