1        IN THE UNITED STATES BANKRUPTCY COURT
      FOR THE NORTHERN DISTRICT OF ILLINOIS
2                   EASTERN DIVISION

3

4   Margaret Ann Johnsson,        )  No. 11 B 38307
                                  )  Chicago, Illinois
5                                 )  July 1, 2015
                    Debtor.       )  10:30 a.m.
6

7

8             TRANSCRIPT OF PROCEEDINGS
      BEFORE THE HONORABLE TIMOTHY BARNES
9

10    APPEARANCES:

11

12  For the Debtor:          Ms. Margaret Johnsson, pro se;

13  For the Trustee:         Ms. Catherine Steege, Trustee;
                             Mr. Landon S. Raiford;
14
    For the U.S. Trustee:    Ms. Kathryn M. Gleason.
15

16

17

18

19

20
     Court Reporter:        MARY C. KELLY, CSR
21                          United States Courthouse
                            219 South Dearborn Street
22                          Room 661
                            Chicago, Illinois  60604
23

24

25

1          THE CLERK:  Margaret Ann Johnsson with

2     related adversary.

3          THE COURT:  Good morning.

4          MS. STEEGE:  Good morning, your Honor.

5     Catherine Steege, the trustee.

6          MR. RAIFORD:  Landon Raiford for the

7     trustee.

8          MS. GLEASON:  Katy Gleason for the U.S.

9     Trustee.

10          MS. JOHNSSON:  Margaret Johnsson, pro se

11     debtor.

12          THE COURT:  All right.  Good morning

13     everyone.

14          All right.  We have a number of matters

15     on for today, although some of them are on short

16     notice and some of which we had considered before

17     and continued to today.

18          The order of the docket, I think, will

19     probably guide me here, but let me just take a

20     look.

21          All right.  The first thing on the call

22     for today is, Ms. Johnsson, you made a motion --

23     I'm reading from the docket entry -- the motion to

24     compel trustee to collect cash property of $334,261

25     from Mark Rittmanic.  That's the motion that you

1    have filed.

2         It was filed in May.  I think we set a

3    briefing deadline with respect to that, and as I

4    understand it, the briefing deadline has been

5    complied with, and, therefore, everything is

6    properly before the Court on that motion.

7         The -- I'm willing to accept, though I

8    will hold each of the parties to a strict time

9    limit, brief comments with respect to this because

10   I've read everything, and there is no point

11   repeating what you've already said.  But I will

12   give each of the parties three minutes in order to

13   make their comments, and I will hold you to a

14   fairly tight timeframe on this.

15        Ms. Johnsson, it's your motion, so if

16   you would like to make comments, you may.

17        MS. JOHNSSON:  And will I have time to

18   reply to Ms. Steege also or not?

19        THE COURT:  I will give you an

20   opportunity to reply, and I won't subtract that

21   from your three minutes, but depending on the depth

22   of Ms. Steege's comments, it will be very short.

23        MS. JOHNSSON:  Okay.  So, again, this

24   motion I brought forward based on Ms. Steege's

25   e-mail, which you already have a copy of, which

1    states that if the state court had found the MSA to

2    be valid and enforceable, that Mr. Rittmanic would

3    owe more money under that agreement.

4            Ms. Steege did not believe me that it

5    had been entered, so I sent her a copy of the order

6    that had been entered two years prior.  And it

7    does, indeed, show that the state court has

8    declared the MSA to be valid and enforceable

9    subject, again, to this Court's jurisdiction from

10   the August 6, 2013 order.

11           I did not see that there was any

12   precedent for a pro se debtor having to bring a

13   motion to get a trustee to collect under a state

14   court approved contract, but since Ms. Steege is

15   refusing to do that, I did bring forth the motion.

16           THE COURT:  All right.  Thank you.

17           Ms. Steege.

18           MS. STEEGE:  Your Honor, unless you have

19   some questions, we put our response to that

20   argument in our papers.

21           THE COURT:  All right.  And I've read

22   the papers, and so under those circumstances, no

23   further response from Ms. Johnsson is called for.

24           I've taken a look at what has been

25   filed, and I understand the arguments.

1           The issue before the Court is a court

2     proceeding pursuant to the court's jurisdiction

3     under 28 USC 157(b)(2)(A).  The Court has

4     jurisdiction under the interoperating procedure of

5     15(a) of the United States District Court of the

6     Northern District of Illinois and 28 USC 1334.  The

7     motion is fully briefed.  I've considered all the

8     briefing of the parties and the comments made

9     today.

10          The operative statute that Ms. Johnsson

11    is essentially trying to invoke is 11 USC Section

12    704(a)(1) which says that the trustee has a duty to

13    collect and reduce to money the property of the

14    estate for which the trustee serves.

15          As the *Oak Park Calabasas* case stated,

16    the trustee may only collect and distribute assets

17    of the debtor which are property of the estate,

18    thus the trustee may only collect $334,261 from

19    Rittmanic if the property -- if that is property of

20    the estate.

21          It's the Court's determination that it

22    is not property of the estate.  The $334,261 in the

23    MSA was to be paid as part of a division of marital

24    assets.  When the debtor filed for bankruptcy, the

25    MSA was not approved, and no division of marital

1      assets was ever made, and as a result, the debtor's

2      estate inherited the debtor's claim to any

3      nonexempt marital property belonging to the debtor

4      and in Rittmanic's possession.

5              The MSA was an executory contract under

6      the Seventh Circuit's definition.  Because the

7      obligation of both the bankrupt -- the bankrupt and

8      other party to the contract are so far unperformed,

9      that failure to complete performance would be a

10     material breach.

11             However, that being said, for an

12     executory contract to be an executory contract, it

13     must first and foremost be a contract, and under my

14     determination, this, in fact, was not a contract

15     because the terms of this writing were subject to

16     the approval of the court, and the approval of the

17     court never occurred at a time when that court had

18     jurisdiction to make such approval.  It was this

19     Court's determination to approve the court when the

20     bankruptcy case was -- to approve the agreement

21     when the bankruptcy case was commenced pursuant to

22     Section 365 of the Bankruptcy Code.  What the

23     bankruptcy -- what the state court did or did not

24     do with respect to this after the commencement of

25     the bankruptcy case is of no bearing with respect

1    to this Court's determination under Section 365.

2    Under Section 365, the trustee did not assume the

3    MSA; therefore, pursuant to operation of 362(d)(1),

4    the MSA was rejected.

5            The debtor has previously argued that

6    the MSA was not valid and now points to the state

7    court and says that the MSA was a valid contract.

8    Again, as I said, that happened at a time when the

9    court did not have jurisdiction to make the

10   determination.

11           The state court further -- to the extent

12   that jurisdiction was vested in the state court,

13   the determination of that was still, nonetheless,

14   not central to the state court's ruling.  It was

15   made so far as I was concerned as *dicta* and also

16   was made in such a way that it deferred to this

17   Court to make the determination, and, therefore,

18   nothing from the state court binds this Court.

19           The trustee, in fact, pursued the

20   estate's claims with respect to the marital

21   property in Rittmanic's possession and ultimately

22   settled with Rittmanic.  On April 30, 2013, this

23   Court approved the settlement between the trustee

24   and Rittmanic over the estate's claims, and that

25   provided that Rittmanic would pay a cash value to

1   the estate in return for a mutual release of

2   claims.  Rittmanic has paid the cash value, and the

3   estate's claims have been released.  As such, there

4   is nothing else for the estate to collect against

5   Rittmanic.  In this regard, therefore, the motion

6   is not well taken, and the motion is denied.

7           Okay.  So that's the first motion on the

8   call today.

9           The second motion on the call today is

10  also by Ms. Johnsson, and that is the motion to

11  extend time to redact court reporter transcripts

12  from 4-1-2015 and 4-7-2015.

13          Ms. Johnsson, I've taken a look at the

14  motion.  You say in the motion that you did not

15  receive notice of the deadline to state the intent

16  to request redaction until after that deadline had

17  passed.

18          How did you receive the notice?

19          MS. JOHNSSON:  It came in the mail.

20          THE COURT:  Okay.  It came in the mail.

21  The --

22          MS. JOHNSSON:  And I referenced the

23  postmark date.

24          THE COURT:  All right.  And you've now

25  obtained the transcripts and taken a look at them.

1 Have you seen anything in those transcripts that

2 you wish to redact?

3          MS. JOHNSSON:  Yes, I do.

4          THE COURT:  All right.  Do you

5 understand that the redaction of the transcripts is

6 limited to those things that are set forth within

7 Federal Rule of Bankruptcy Procedure 9037?  You may

8 not simply redact matters that you wish to be out

9 of the transcript.  It must be within the scope of

10 9037.

11          MS. JOHNSSON:  There are specific quotes

12 and things like that that I would like to correct.

13          THE COURT:  Correction and redaction are

14 two different things, Ms. Johnsson.

15          MS. JOHNSSON:  Okay.

16          THE COURT:  Redaction is seeking to have

17 something that is within the scope of 9037, Federal

18 Rule of Bankruptcy Procedure 9037, that is, your

19 Social Security Number, your bank account number,

20 something of that nature, you may ask that the

21 reporter redact those out.

22          That's not what this process -- this

23 process is not for you to modify the transcript to

24 read the way you would like it to read.  It's

25 simply to take out things that the Administrative

1    Office of the U.S. Court have determined should be

2    redacted from public disclosure.

3              Do you understand the difference?

4              MS. JOHNSSON:  Somewhat.  I would like

5    to reserve my right and then take a look at 9037

6    and then see if I actually do need to redact or

7    not.

8              THE COURT:  All right.  So you've had

9    the opportunity to do that prior to today.  You've

10   had an opportunity to obtain the transcripts and

11   make that determination.

12             If you, in your further review of the

13   transcripts, find something within 9037, bring a

14   motion and specifically state why it should be

15   redacted under that Rule.  When you do that, I will

16   consider the motion on its merits.

17             But as it stands right now, the motion

18   is not well taken.  It's untimely, and you failed

19   to establish the grounds under 9037.  This motion

20   is denied without prejudice to you bringing such a

21   motion based on grounds should you find them.

22             All right.  The next motion is Ms.

23   Johnsson's motion to alter or amend an order

24   relating to -- I'll just read it.  Motion to Alter

25   or Amend Judgment/Order, and it relates to Docket

1    Number 359.

2              And that was the order that --

3              MS. JOHNSSON:  Your Honor --

4              THE COURT:  -- had the withdrawal of the

5    objection of the trustee's -- to claim of exemption

6    on that one.

7              All right.  So this one, Ms. Johnsson, I

8    believe this is the first time this one is up, and

9    the motion was filed on June 23rd.

10             If the trustee wants an opportunity to

11   respond in writing, I will afford the trustee an

12   opportunity to respond to it, but otherwise I'll

13   also accept an oral response if that is what the

14   trustee would like to do.

15             MS. STEEGE:  That's fine, your Honor.

16             We would ask that the motion be denied.

17   If you recall, this was an objection to an

18   exemption she claimed in marital property and in

19   her alimony.

20             Your Honor granted the objection with

21   regard to marital property a number of years ago.

22   We continued the alimony objection because it

23   wasn't determined whether she would get alimony.

24   She would have an exemption up to an amount

25   reasonably necessary for her support.

1            The Court denied her request for alimony

2    as part of that order that was the prior motion.

3    She appealed that.  And at the last hearing, in an

4    effort to kind of bring things to a head, we said

5    we would withdraw that objection.  Given she had

6    been denied it, it seemed unlikely she would get it

7    on appeal.

8            As it turns out, after the briefing

9    concluded on the other motion that she filed, my

10   understanding is the Illinois Appellate Court

11   denied her appeal in regard to the alimony, so it

12   does not appear as though Ms. Johnsson would get

13   any alimony.

14           There is no reason for that exemption

15   objection to be pending.  We think the withdrawal

16   was correct when we did it, and it was obviously.

17   There was no appeal.  And that's all that the order

18   did was allow us to withdraw that.

19           You never granted our motion.  You asked

20   us just to withdraw it.  So I don't really see why

21   there would be any basis to reconsider that and

22   certainly not to allow her to brief the issue which

23   is what she seems to be saying she wants to do.

24           THE COURT:  Ms. Johnsson.

25           MS. JOHNSSON:  Actually, that's not what

1    I'm asking to do.  The order is incomplete to me

2    from what happened in the last court hearing what

3    they were supposed to reflect in the order.

4                For instance, the order should have

5    mentioned three words, alimony, maintenance and

6    support, and it only mentions one of those three

7    words.  So I was looking to get all three words in

8    or to understand why two words were excluded.

9                And then secondarily, as Ms. Steege just

10   said again, her motion -- it was all agreed here

11   that her motion was to be withdrawn, and it doesn't

12   state that her motion is to be withdrawn, so I

13   don't know if there are any other open objections.

14   This is part of my issue with this case throughout

15   is that not doing something doesn't do something.

16                So I'm looking for her motion to be

17   withdrawn or for it to be resolved, and I'm looking

18   for that order to be corrected with all three

19   words, alimony, maintenance and support, rather

20   than just one of the three because then it leaves

21   the other two open.

22                THE COURT:  All right.  Give me a

23   moment.

24                Ms. Johnsson, do you have a copy of the

25   order?

1          MS. JOHNSSON:  I do.

2          THE COURT:  Would you pass that up,

3     please?

4          MS. JOHNSSON:  Sure.

5          (Document tendered.)

6          THE COURT:  All right.  So, Ms.

7     Johnsson, I'm taking a look at the order, and I

8     understand the comments that you're making, but

9     what you need to understand is that while the

10    description of the objection is perhaps not to your

11    liking, it is sufficient to identify the objection

12    that is being withdrawn.  You simply cannot say

13    that the objection has not been withdrawn because

14    the description is not as fulsome as you would

15    like.  It's a binary factor.  It's either still

16    being prosecuted or it's been withdrawn.

17          This order deems that objection to be

18    withdrawn.  I see no reason to alter this order.

19    It makes it perfectly clear that the objection is

20    no longer being prosecuted, so however you would

21    like to describe it is up to you.  It is an entry

22    on the Court's docket, and it is no longer being

23    prosecuted.

24          MS. JOHNSSON:  Your Honor, I do have a

25    pleading in post-judgment court and divorce court,

1     and I'm actually in the process of moving that

2     pleading forward where I am specifically asked for

3     maintenance and for child support.

4              So, again, I'm just looking for clarity.

5     I don't know if there is specific reasons why she

6     excluded support and maintenance.

7              THE COURT:  Ms. Johnsson, you're not

8     listening to me.  She hasn't excluded that.  Either

9     she is objecting or she is not.  She had an

10    objection.  The objection is withdrawn.  No matter

11    how you describe it, whether you call it alimony or

12    you call it alimony, maintenance and support, it's

13    still the same objection.

14             MS. JOHNSSON:  Your Honor --

15             THE COURT:  It is a docket entry.

16    However we describe it, it has been withdrawn.  It

17    is no longer being prosecuted.  And pursuant to the

18    Supreme Court's ruling in *Taylor*, if the objection

19    is not properly raised within the time period, no

20    objection may be raised.

21             So she had an objection, and she's

22    withdrawn it.  It's done.

23             MS. JOHNSSON:  So it's withdrawn on the

24    docket record?  Because it's not withdrawn in that

25    order, which is my confusion.

1              THE COURT:  Again, Ms. Johnsson, it's

2     withdrawn.  It is no longer being prosecuted in

3     this case.  It stays there as an entry in the

4     docket because we don't have a time machine.  The

5     docket is consecutive.  So it was filed, and then

6     it was withdrawn.  The reference there clearly

7     references the previous objection, and the

8     objection is withdrawn.

9              I see no reason -- frankly, you're not

10    raising any cognizable relief here.  The motion is

11    denied.

12             MS. JOHNSSON:  Should I take the order

13    back then or --

14             THE COURT:  We're going to take a copy

15    of your order because we want to make sure that we

16    have the right hyperlink in there.

17             But, again, the motion is denied.

18    You'll get a copy back from my deputy here after

19    the hearing.

20             MS. JOHNSSON:  Can I just say one thing?

21    The last time that the trustee withdrew their

22    motion, they actually wrote that sentence in the

23    order.  So that's my confusion is that the last

24    time they withdrew one, they wrote the motion is

25    withdrawn, so I was expecting that's what I would

1    see again.

2              I understand now that you are saying it

3    is, indeed, withdrawn, but I don't want it to show

4    up with prejudice against me on the docket.

5              THE COURT:  All right.  Let's move on.

6              The next is the debtor's motion to alter

7    or amend judgment order, and this relates to an

8    order of May 28, 2013.

9              The request of the debtor as I

10   understand it, is that the docket entry states with

11   prejudice with respect to the Court's denial of the

12   motion, whereas the Court's comments in the hearing

13   stated without prejudice.

14             MS. JOHNSSON:  And the order states

15   without prejudice, and I have a copy of that order.

16             THE COURT:  So the order actually says

17   without prejudice?

18             MS. JOHNSSON:  It does.

19             THE COURT:  We're simply correcting the

20   docket entry.

21             MS. JOHNSSON:  Right.  That's my motion

22   to correct the docket entry.

23             THE COURT:  I see no reason why we

24   couldn't under Rule 60(a) grant this request and

25   correct the docket entry.  The docket entry is

1    simply inaccurate.

2              MS. STEEGE:  We have no objection to

3    that.

4              THE COURT:  So the request is granted.

5    We will enter an order that allows the docket entry

6    to be clarified.

7              Okay.  So the next we have is the

8    continued -- I'm sorry, it's not the continued.

9    Give me one moment.

10             All right.  So, Ms. Steege, help me out

11   here.

12             MS. STEEGE:  Yes.

13             THE COURT:  My understanding is pursuant

14   to the discussion we just had and the previous

15   hearings, that after the resolution of the

16   trustee's objection to exemptions in the earlier

17   hearing, there was no remaining objection to

18   exemption from the trustee until such time as the

19   debtor then amended her exemptions, is that

20   correct?

21             MS. STEEGE:  Correct.

22             THE COURT:  All right.

23             MS. STEEGE:  And she then amended her

24   exemptions last week on June 23rd, and so we filed

25   an objection.

1           Out of an abundance of caution, your

2    Honor, we went through every single exemption that

3    she was claiming and either explained how she had

4    retained the property to which the exemption

5    attached or why it had already been satisfied

6    pursuant to court order.

7           And then with respect to what really are

8    the changes to the exemptions, we then explained

9    why we have objections to that.

10          She again -- and she reasserted

11   objections that you had -- exemptions that she had

12   sought to claim in prior motions that you had told

13   her she could not claim.  So we just went through

14   it line item by line item so it would all be clear

15   on the record exactly where we were with regard to

16   that.

17          And I don't know if she wants a chance

18   to respond in writing to it or how you want us to

19   proceed.  I can walk through it if your Honor would

20   like.

21          THE COURT:  I think Ms. Johnsson has

22   asked for an opportunity to respond in writing and

23   file some form of updated declaration on which she

24   requested an opportunity to respond, is that

25   correct, or am I compounding this with the next

1    motion?

2              MR. RAIFORD:  I think you're compounding

3    with the next motion.

4              MS. JOHNSSON:  Could I say anything

5    or -- no?

6              THE COURT:  Ms. Johnsson --

7              MS. JOHNSSON:  I can say what I was

8    meaning to do, but --

9              THE COURT:  Ms. Johnsson, you always get

10   your turn.  You sometimes waste your turn, but you

11   always get it.  So if you could wait for your turn,

12   it will happen.

13             MS. JOHNSSON:  Okay.

14             THE COURT:  But Ms. Steege and I were

15   talking not because I wanted to hear necessarily

16   the basis of her objection, but what I was trying

17   to understand is why this is showing up on my call

18   with all the notes of the previous hearings on the

19   exemption objection as if it was part of that

20   previous objection, and it shouldn't be because,

21   Ms. Johnsson, we just earlier -- we just

22   established a moment ago that a previous objection

23   has been resolved.

24             So this is just a docketing error -- or

25   not a docketing error.  But it's part of my system

1    has made a mistake, and it's taken your new

2    objection, and it's added the notes in from the old

3    one as well, and it shouldn't have, and that was

4    the extent of my question.

5              Now, back to the actual objection.  Ms.

6    Steege has gone ahead and told me the basis for her

7    objection, and, Ms. Johnsson, as always, you have

8    an opportunity to respond.  Would you like an

9    opportunity in writing or would you like to do it

10   now orally?

11             MS. JOHNSSON:  Yes.  I only received

12   three days notice of this, and I would indeed like

13   to respond in writing because I find it to be a

14   highly defamatory document.  So I would like to

15   respond in writing rather than take you through

16   line item by line item because we would be here for

17   a long time.

18             THE COURT:  All right.  So I'll give you

19   an opportunity to respond in writing.  How much

20   time would you like?

21             MS. JOHNSSON:  I would like 28 days.

22             THE COURT:  Let's see.  I'll take a look

23   at the calendar.

24             So 28 days is the 29th of July.

25             Ms. Steege, how much time would you like

1   to reply?

2          MS. STEEGE:  Your Honor, could we have a

3   week to reply?

4          THE COURT:  All right.  So the 29th of

5   July is then followed by a week later, August 5th.

6   All right.  At which point we would come back on

7   for hearing on August 19th.

8          MS. JOHNSSON:  Your Honor, I can't come

9   back on Mondays, Wednesdays or Fridays after

10  August 10th because I have my new job I'm starting.

11         THE COURT:  How is August 18th?

12         MS. JOHNSSON:  That's much better.

13         THE COURT:  Ms. Steege?

14         MS. STEEGE:  That's fine, your Honor.

15         THE COURT:  August 18th.

16         MS. JOHNSSON:  10:30?

17         THE COURT:  It will be at 10:30, that's

18  correct.

19         All right.  So the one thing I'll

20  caution the parties is I'll make sure they're

21  acting within the scope of the Seventh Circuit

22  decision in *Kazi*, which the Seventh Circuit

23  decision in *Kazi* made clear that the amendment of

24  exemptions does not open up the opportunity to

25  object to anything that was not changed.  It simply

1    says that to the extent that you've changed

2    something, then a new objection period of 30 days

3    runs.

4            So my reading of this initially is this

5    didn't run afoul of *Kazi*.  It was a protective

6    statement made by the trustee with respect to some

7    of these things.  But I'm aware of the case, and I

8    know of its holdings, and I wanted Ms. Johnsson to

9    be aware of the case as well.

10           Ms. Johnsson, if you're going to look it

11   up, I will give you the cite.  It's 985 F.2d 318.

12   K-A-Z-I is Kazi.  Okay?

13           So that basically says, again, only the

14   matters that you changed are subject to objection.

15   The original 30-day deadline still applies to

16   matters that were not changed.

17           MS. JOHNSSON:  I appreciate that because

18   that was obviously my intent.  I was just changing

19   some things and not re-entering all the rest of the

20   things that were already there.

21           THE COURT:  I understand, and we'll

22   clarify that when we get to the hearing.  But we

23   set the deadlines.

24           All right.  So now we keep going.  What

25   we have now is, Ms. Steege, you made a motion for

1    sanctions against Ms. Johnsson relating to the

2    deposition that had been set by the Court.

3             Ms. Steege, this is the one that Ms.

4    Johnsson has asked for leave to respond to.

5             MS. STEEGE:  Yes, your Honor.

6             THE COURT:  So rather than hear from

7    either of you with respect to the substance of what

8    has been requested here, I would prefer to simply

9    set the scheduling that Ms. Johnsson has asked for.

10            So, again, Ms. Johnsson, how much time

11   would you like to respond to the motion?

12            MS. JOHNSSON:  It would be great if I

13   could have that one on the 29th also.

14            THE COURT:  That's fine.  And Ms.

15   Steege?

16            MS. STEEGE:  Your Honor, I guess if we

17   could have August 5th again.

18            THE COURT:  All right.  So I guess we're

19   following the same briefing schedule then.

20   July 29th for Ms. Johnsson.  August 5th for the

21   Chapter 7 trustee.  And then back on for hearing on

22   August 18th.

23            MS. STEEGE:  Your Honor, as long as

24   we're not going to get any hearing until

25   August 18th, would it be acceptable if we did

1    August 7th for each of those because I'm going to

2    be out of town the week before?

3              THE COURT:  Is that a Friday?

4              MS. STEEGE:  So just two additional

5    days.

6              MS. JOHNSSON:  Your Honor, I would

7    rather move up the schedule because to get it the

8    day before I start my employment really leaves me

9    unable to --

10              MS. STEEGE:  Fine, your Honor.  We'll

11   leave it at August 5th.

12              THE COURT:  All right.  August 5th on

13   both for the scheduling then.

14              All right.  So we've taken care of that

15   for today.

16              The remainder of the issue has to do

17   with the status on the adversary, but I think the

18   status on the adversary has to be held in abeyance

19   until I make a determination of the trustee's

20   motion, so I'll take the status of the adversary

21   and put it over to August 18th at 10:30 as well.

22              I think that resolves or schedules every

23   matter that was set for today.

24              MS. STEEGE:  Thank you.

25              MS. JOHNSSON:  I think there is one more

1   matter, your Honor.

2          THE COURT:  I don't think so, but if you

3   would like to draw my attention to it.

4          MS. JOHNSSON:  I had a motion to compel

5   the trustee's discovery compliance, and I have

6   never received a response from the trustee on that,

7   and, therefore, I have not replied because I don't

8   have a response.

9          And, also, there is the subject of the

10  subpoena in our May 20, 2015 hearing.  They

11  casually mentioned that they had filed subpoenas,

12  and I have requested in open court that they

13  provide me with the copies of that, and I have

14  still not received -- you know, the only way that I

15  get consistent notice of anything is in the mail,

16  but I do receive everything that comes to me in the

17  mail.  And I've not received the subpoenas from

18  them, but I've been receiving copies of the

19  subpoenas from the party that are telling me that I

20  should quash them because of they're looking for

21  15 years worth of history and all these things that

22  they don't have a right to.

23          So I thought we were having a hearing

24  today on my motion to compel, that it was scheduled

25  for hearing as of our last time, but they haven't

1   responded.  So I'm looking for their response to my

2   motion to compel, and I'm looking for the full set

3   of the subpoenas and the certification that that is

4   a full set of the subpoenas because from what I

5   have seen from the limited parties that have given

6   me copies, I definitely want to file motions to

7   quash.

8          THE COURT:  All right.  Ms. Steege?

9          MS. STEEGE:  Yes, your Honor.

10         First, with regard to the motion to

11  compel discovery compliance, I have the minute

12  order that your Honor entered on May 20th if you

13  would like a copy.  You denied that motion for

14  reasons stated in open court on the record.  So

15  that motion was disposed of.

16         With regard to the subpoenas just so

17  your Honor understands what has happened here, we

18  asked Ms. Johnsson -- because, you know, the case

19  involved inheritance proceeds.  She admitted she

20  was told by her counsel Ms. Ebner at the time, that

21  she had to turn the money over to me.  She didn't

22  do it, and she spent it.  We served a discovery

23  request --

24         MS. JOHNSSON:  I'm sorry, your Honor,

25  I --

1          THE COURT:  Ms. Johnsson.

2          MS. STEEGE:  We served a request in

3     which we asked her to provide us with information

4     about the exact dollars she received and how she

5     spent those dollars and over what timeframe.

6          She never answered that discovery.  We

7     repeatedly asked her for information.  If you don't

8     have the records, could you tell us which bank you

9     banked at?  We'll subpoena it.  Again, like the

10    deposition date, she never would respond to that.

11         So we ultimately went and we were able

12    to figure out what we think are the banks where the

13    money went, and we served subpoenas.  Mr. Raiford

14    served her with copies of the subpoenas.  We have

15    the e-mail where we sent that.

16         We have received returns from one of the

17    banks that has the latest amount of checks that

18    went out, and I'm blanking on the name right now,

19    and we sent her copies of those documents.

20         She then e-mailed us, Mr. Raiford, and

21    said I don't have copies of that.  He resent the

22    same e-mail and said here is what they've complied

23    with.

24         The other bank, I think, just provided

25    us with copies yesterday.  We're going to get her

1     those copies as well.

2              We also served -- because part of this

3     complaint deals with this property she concealed

4     that is in this trust she has an interest in.

5     Based on the documents she produced to us, it was

6     clear she was setting up the ownership of this for

7     her own tax advantage, and so we sought, because

8     she didn't produce it in discovery, records from

9     the attorney -- the tax attorney who was putting

10    these records and returns together for her and

11    American Express Tax Consulting which also was

12    doing tax work for her.

13             She had copies of those subpoenas.

14    She's directed all of those parties not to let us

15    have the documents, even though under Section 541,

16    technically those documents are property of the

17    estate.

18             So we're evaluating whether we're going

19    to come in and ask your Honor to enter an order

20    directing the turnover of what really are property

21    of the estate.  She doesn't have a basis to say

22    that I can't look at her underlying financial

23    records.

24             That's what is going on here.  She has

25    been given notice of all this.  We give her stuff

1    as the subpoenas come in.  She doesn't have to pay

2    the bank.  They charge you for copies.  We aren't

3    passing any of those costs on to her.  We're just

4    sending her copies of everything.  She has

5    everything.

6             THE COURT:  Let's talk.  I've heard from

7    Ms. Johnsson, and I've heard from Ms. Steege.

8             MS. JOHNSSON:  Your Honor, I --

9             THE COURT:  Ms. Johnsson, I've heard

10   from you, and I've heard from Ms. Steege.  The fact

11   is there is nothing before the Court on this right

12   now.  The motion to compel was denied, and there is

13   no pending motion on this issue.

14             Ms. Johnsson, if you would like to raise

15   an issue, raise the issue.  Schedule it.  I'll hear

16   it when it's before me.  But this is not properly

17   before the Court today.

18             So rather than let the parties continue

19   to argue back and forth on what they believe to be

20   the case, I've heard from each side.  I've heard

21   enough.  We're done.  File something, and I'll

22   consider it when it's filed.

23             MS. JOHNSSON:  Can I just say that I

24   deny --

25             THE COURT:  No, you may not.

1          MS. JOHNSSON:  -- things she has just

2     said?

3          THE COURT:  Ms. Johnsson --

4          MS. JOHNSSON:  She has just accused me

5     of a number of things I did not do.

6          THE COURT:  Ms. Johnsson, at this point,

7     the hearing is concluded.  You will be escorted

8     out.

9          MS. JOHNSSON:  Okay.  Thank you, your

10    Honor.

11          MS. STEEGE:  Thank you, your Honor.

12               (Which were all the proceedings had

13                in the above-entitled cause,

14               July 1, 2015, 10:30 a.m.)

15

16    I, MARY C. KELLY, CSR, DO HEREBY CERTIFY THAT THE
      FOREGOING IS A TRUE AND ACCURATE TRANSCRIPT OF
      PROCEEDINGS HAD IN THE ABOVE-ENTITLED CAUSE.(f)

17

18

19

20

21

22

23

24

25